**DILWORTH, Appellant,**

v.

**DILWORTH, Appellee.**

[Cite as *Dilworth v. Dilworth* (1996), 115 Ohio App.3d 537.]

Court of Appeals of Ohio,
Second District, Champaign County.

No. 96–CA–05.

Decided Nov. 8, 1996.

*S. Richard Richman*, for appellant Susan L. Dilworth.

*John F. Spencer*, for appellee Thomas J. Dilworth.

*Thomas J. Dilworth, pro se.*

FAIN, Judge.

Plaintiff-appellant Susan L. Dilworth appeals from a post-decree order preventing her and her former husband, defendant-appellee Thomas Dilworth, from having romantic guests stay overnight in the home when their minor children are present. Dilworth contends that the order is overbroad, vague, and unaccompanied by the findings required by R.C. 3109.04(E)(1)(a) and (F)(1). Although we disagree with her other arguments, we agree that the trial court erred when it held the statute inapplicable to these proceedings. We cannot say that this error was harmless because of the extraordinary discretion confided in

trial courts in matters of child custody and care, as a result of which we cannot know how the trial court would have decided the matter had it correctly considered the statute. Accordingly, the judgment from which this appeal is taken is reversed, and this cause is remanded for the trial court to reconsider the matter in the light of R.C. 3109.04, and to make the findings required by the statute.

## I

On February 3, 1994, plaintiff-appellant Susan L. Dilworth and defendant-appellee Thomas Dilworth were divorced after nine years of marriage. In its divorce decree, the Court of Common Pleas of Champaign County awarded custody of the Dilworths' two minor children, Kevan and Lisa, to Ms. Dilworth. In October 1995, Ms. Dilworth permitted her boyfriend, Steve Cross, to sleep overnight on her couch while she and her children slept upstairs. Eventually, Kevan and Lisa told Mr. Dilworth about their mother's overnight guest.

On November 29, 1995, Mr. Dilworth filed a motion requesting an order to restrain Ms. Dilworth from having any unrelated male overnight guests while Kevan and Lisa were in her custody. The magistrate held a hearing on January 2, 1996 and found that Ms. Dilworth did permit her boyfriend to stay overnight while her children were in the house. The magistrate found:

"The Court has a policy that no person with whom a party is romantically involved may reside overnight while the children of the parties are present."

In keeping with this policy, the magistrate ordered the Dilworths to forbid any person with whom they were romantically involved to reside overnight while their children were present. Ms. Dilworth filed objections to the magistrate's decision. On February 9, 1996, the trial court overruled Ms. Dilworth's objections and adopted the magistrate's decision.

From the judgment of the trial court, Ms. Dilworth appeals.

## II

Ms. Dilworth's sole assignment of error is as follows:

"Whether the trial court erred in issuing an order to appellant, based on its unwritten and undocumented court 'policy' denying her the right to permit a male friend to remain overnight in her home while her children are present in the home."

Ms. Dilworth contends that the trial court, in adopting the magistrate's decision, modified the existing custody order and, consequently, failed to comply with R.C. 3109.04 by making required findings of fact regarding the best

interests of the child. Ms. Dilworth also argues that the trial court's order is impermissibly based upon notions of morality and punishes her for violating the trial court's ethical standards. Further, Ms. Dilworth suggests that the trial court's mandate, forbidding her boyfriend to stay overnight while her children are in the home, violates her right to privacy and her right to association pursuant to the United States Constitution. Finally, Ms. Dilworth maintains that the trial court's order is so vague, undefined, and arbitrary as to be unenforceable.

From our review of the record, we conclude that the trial court's order did modify Ms. Dilworth's parental responsibilities, and, accordingly, the trial court erred by failing to make the necessary findings set forth in R.C. 3109.04.

In its entry adopting the magistrate's order, the trial court reasoned:

"The Court finds specifically that the Magistrate's order does not modify the existing order and allocation of parental rights and responsibilities.

"At the hearing in question, there was no action taken against either party concerning the welfare of the children, except to remind the parties of policy concerning parental conduct."

The trial court suggested that the purpose of its order was merely to set a standard that would assist the Dilworths' children in adjusting to the divorce and to their parents' new lifestyles.

We disagree with the trial court's conclusion that its order forbidding the overnight stay of the Dilworths' romantic friends did not modify their existing parental responsibilities. The order of the magistrate that the trial court adopted specifically ordered both parties to prevent their romantic friends from staying overnight while the children were in the home. By adopting that order, the trial court regulated the parents' conduct for the sole purpose of promoting the general welfare of the children. In effect, the trial court increased the Dilworths' parental responsibilities by requiring them to avoid exposing the children to overnight romantic guests. Thus, by issuing its order, the trial court in effect modified the parents' responsibilities without complying with the mandatory provisions of R.C. 3109.04.

Proceedings pertaining to the allocation of parental rights and responsibilities are governed by R.C. 3109.04. With respect to the modification of a prior decree, the statute provides:

"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree,

and that the modification is necessary to serve the best interest of the child."
R.C. 3109.04(E)(1)(a); see *Jacobs v. Jacobs* (1995), 102 Ohio App.3d 568, 571, 657
N.E.2d 580, 582.

■ In determining the best interest of the child, the trial court shall consider
all relevant factors, including the specific factors set forth in R.C. 3109.04(F)(1).[1]

The trial court failed to make the necessary findings pursuant to R.C. 3109.04.
In fact, the trial court in its order specifically disclaimed the application of R.C.
3109.04 to the issue before it. The trial court erred when it held the statute
inapplicable, and, in view of the extraordinary discretion extended to trial courts
in all matters involving the care and custody of children, we cannot say that the
trial court's error was harmless—we cannot be reasonably sure that the trial
court would have entered the same order had it understood that the statute was
applicable. Accordingly, we must reverse the judgment of the trial court and
remand the cause for the trial court to render a decision that complies with R.C.
3109.04 and, in particular, makes the findings required by R.C. 3109.04(E)(1)(a)
and (F)(1). If allowed to stand, the trial court's order would alter the terms of
custody while circumventing the procedural safeguards of R.C. 3109.04. Such an
order is contrary to law.

■ With respect to the substance of the order itself, we reject Ms. Dilworth's
argument that the trial court's order was impermissibly based upon notions of
morality. The testimony presented during the magistrate's hearing supports a
finding that the overnight stays by Ms. Dilworth's boyfriend had an adverse
impact on the welfare of the children:

"MAGISTRATE: What do you mean by the children are confused in your
opinion?

"MR. DILWORTH: They express that they don't understand why there's a lot
of different men and why they're staying overnight with their mom.

"MAGISTRATE: What do you mean by this is upsetting?

"MR. DILWORTH: They become very weepy and they start to cry, and it's
very hard to get them out of a, like a depressed mood."

■ Based on this testimony, the trial court's order limiting the overnight
stays of the parents' romantic friends was consistent with Ohio law. See *Whaley*

---

1. We disagree with the court of appeals in *Nyikes v. Rhodes* (July 22, 1994), Lucas App. No. L–
93–363, unreported, 1994 WL 385183, which held that the trial court's failure to consider
specific factors enumerated in R.C. 3109.04(F)(1) was not reversible error. We interpret the
General Assembly's use of the word "shall" in the statute as mandating that the trial court
consider all of the enumerated factors, as well as all other relevant factors, in determining the
best interests of the child.

*v. Whaley* (1978) 61 Ohio App.2d 111, 15 O.O.3d 136, 399 N.E.2d 1270, paragraph three of the syllabus ("A court's inquiry into the moral conduct or standards of a custodial parent is limited to a determination of the effect of such conduct on the child."). We also find that the language of the order was straightforward and comprehensible and provides adequate notice to the parties as to the scope and nature of the mandate. In sum, we would direct Ms. Dilworth to the analysis set forth in *Hollingsworth v. Hollingsworth* (1986), 34 Ohio App.3d 13, 15–16, 516 N.E.2d 1250, 1253, to address her concerns regarding the propriety of the trial court's order:

"Generally, parental and familial rights are accorded constitutional protection. However, the Constitution does not preclude the state from asserting its own interests or the interests of the child in certain situations.

" * * *

" * * * The state is injected into the divorce process by the very nature of the act. The state must oversee an equitable settlement, dissolve the marriage, and arrange for child custody, support, and visitation. Thereafter, the state must remain as an arbiter of the terms of the divorce.

"Further, the state has a compelling interest in assuring that the child or children of a broken marriage or home receive the attention, care, and concern it is presumed they would have received had the marriage and family life not been drastically altered by the divorce action."

Ms. Dilworth's sole assignment of error is sustained.

### III

Ms. Dilworth's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion, specifically to render a decision based on the requisite findings set forth in R.C. 3109.04(E)(1)(a) and (F)(1).

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J., and FREDERICK N. YOUNG, J., concur.