**ROHRBAUGH, Appellee,**

v.

**ROHRBAUGH, Appellant.**

[Cite as *Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 97 CA 183.

Decided Feb. 11, 2000.

600

*Mary Jane Stephens*, for appellee.

*David R. White*, for appellant.

WAITE, Judge.

This case presents a timely appeal from the decision of the Mahoning County Court of Common Pleas, Domestic Relations Division, denying appellant's motion for reallocation of parental rights and responsibilities. Appellant contends that the trial court abused its discretion and committed an error of law when it determined that appellee's relocation to Columbus, Ohio, was not a change in circumstances warranting a change in custody of the parties' two minor children. For the following reasons, this court affirms the judgment of the trial court.

On November 15, 1994, a final decree granting a divorce to appellee, Denese Zarich Rohrbaugh, and appellant, Bruce Allen Rohrbaugh, was issued. That decree included a shared parenting plan in which appellant and appellee were declared residential parents of their two minor children although appellee retained primary custody. Based upon appellee's fear that her continued employment at St. Elizabeth Hospital in Youngstown, Ohio, was in jeopardy, appellee filed a notice of intent to relocate with the Mahoning County Court of Common Pleas on May 21, 1996.

On August 1, 1996, appellee relocated with the children to Columbus, Ohio, and accepted employment at St. Ann's Hospital. Thereafter, she enrolled the eldest child in a local kindergarten class. Appellant responded to appellee's notice of intent to relocate on August 26, 1996 by filing a motion for a restraining order to

prevent the child from being enrolled in the Columbus school. The trial court overruled this motion and appellant subsequently filed a motion for reallocation of parental rights and responsibilities. In this motion, appellant sought a modification of the 1994 shared parenting plan, asking that he be given sole parental rights and responsibilities for the two minor children.

A hearing on appellant's motion took place on July 10, 1997. After this hearing, the trial court issued a judgment order denying appellant's motion. The judge determined that appellee's move to Columbus did not constitute a "change in circumstances" sufficient to justify a modification of the original shared parenting plan and that any change in custody would not be in the best interest of the children.

It is from this decision that the present appeal arises. Appellant's first two assignments of error are interrelated and shall, for the sake of clarity and convenience, be considered together. These two assignments of error provide:

"The trial court committed an error of law in its conclusion that the relocation of a residential parent is not a change in circumstances, rather than looking at the totality of the circumstances surrounding that relocation, for purposes of a modification of parental rights.

"The trial court committed prejudicial error in finding that the relocation of the appellee was not a change in circumstances for purposes of considering appellant's motion for a modification of parental rights."

Before this court analyzes appellant's arguments, it is necessary to observe that appellant's original motion, although couched in terms of a modification, was in practical terms actually seeking an outright termination of the existing shared parenting plan, which the trial court declined to do. This distinction is important to note as there are two separate statutory provisions containing different criteria for granting either of these courses of action. In this case, appellant chose to proceed under the statutory framework pertaining to a modification rather than a termination of the parenting plan. Because the trial court's findings of facts, conclusions of law and final custody determination are proper under either of the statutory sections, this court will address the issues as presented in the parties' briefs.

In these two assignments of error, appellant challenges the trial court's denial of his motion for reallocation of parental rights and responsibilities by arguing that the trial court misapplied the applicable law in finding that appellee's relocation to Columbus, Ohio, did not constitute a change in circumstances sufficient to warrant a modification of an existing shared parenting plan. In the alternative, appellant argues that even if the trial court applied the correct legal principles to the facts of the case, it was an abuse of discretion to find that

appellee's in-state move did not rise to the level of a change in circumstances sufficient to modify the existing shared parenting plan.

 In Ohio, a trial court's decision regarding the custody of children that is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. In determining whether a trial court has abused its discretion, we cannot simply substitute our judgment for that of the trial court. See, *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142; *Butler v. Butler* (1995), 107 Ohio App.3d 633, 669 N.E.2d 291. Rather, an abuse of discretion connotes that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Will v. Will* (1996), 113 Ohio App.3d 8, 680 N.E.2d 197; *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. This is the appropriate standard, as the trial court should have discretion to do what is equitable upon the facts and circumstances of each case. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031. As such, a trial court does not abuse its discretion in an award of custody and its decision will not be reversed as against the manifest weight of the evidence when it is supported by a substantial amount of competent and credible evidence. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 23, 550 N.E.2d 178. With respect to our duty of deference to the trial court in disputes over the custody of children, the Ohio Supreme Court has stated:

"The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849,

While a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and must be guided by the language set forth in R.C. 3109.04. *Id.* This statutory provision provides:

"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds * * * that a change has occurred in the circumstances of the child, [or] his residential parent * * * and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and * * * The harm likely to be caused by a change of environment is

outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii).

Thus, three elements must have existed in order for the trial court in this case to have properly modified the existing shared parenting plan to grant appellant sole residential parent status: (1) there must be an initial threshold showing of a change in circumstances, (2) if circumstances have changed, the modification of custody must be in the children's best interests, and, (3) any harm to the children from a modification of the plan must be outweighed by the advantages of such a modification. *Clark v. Smith* (1998), 130 Ohio App.3d 648, 653, 720 N.E.2d 973, 976. The record must support each of these findings or the modification of child custody is contrary to law. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 417, 674 N.E.2d 1159, 1161–1162. Additionally, R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest. *Meyer v. Anderson* (April 18, 1997), Miami Co.App. No. 96CA32, unreported, 1997 WL 189383.

In the case before us, the trial court specifically found that appellee's relocation to Columbus, Ohio, did not constitute a change in circumstance sufficient to justify a modification of the existing shared parenting plan. Therefore, this court must determine whether the trial court abused its discretion when it so determined. *Davis,* supra, 77 Ohio St.3d at 416–417, 674 N.E.2d at 1160–1162. Appellant argues that *Vincenzo v. Vincenzo* (1982), 2 Ohio App.3d 307, 2 OBR 339, 441 N.E.2d 1139 and *Schiavone v. Antonelli* (December 10, 1993), Trumbull App. No. 92–T–4794, unreported, 1993 WL 548034, the cases cited by the trial court in support of this determination, were misapplied. Specifically, appellant contends that the trial court ruled that a relocation of a residential parent does not constitute a change in circumstance *as a matter of law.*

The record before us does not support appellant's contention. Both of these cases stand for the proposition that a relocation of a residential parent does not, *in and of itself,* equate to a change in circumstance and that the standards articulated in R.C. 3109.04(E), *supra,* should be applied. The *Schiavone* court noted that if the primary motive for the relocation was to deprive the noncustodial parent of his ability to visit with the children, a change in circumstance could be found. *Id.* *Schiavone* illustrates the reasoning behind the conclusion that relocation is not, standing alone, sufficient to determine that a change in circumstances has occurred. There, the court stated:

"Although R.C. 3109.04 does not set forth a definition of the phrase 'change in circumstances,' the courts of this state have generally held that the phrase is intended to denote an event occurrence, or situation which has a material and

adverse effect upon a child. *Wyss v. Wyss* (1982), 3 Ohio App.3d 412 [3 OBR 479, 445 N.E.2d 1153].

"In applying this definition, this court has further held that the act of moving the children to a different state and then resettling with a new stepparent does not, by itself, constitute a sufficient change of circumstances to warrant a change of custody. *Vincenzo v. Vincenzo* (1982), 2 Ohio App.3d 307 [2 OBR 339, 441 N.E.2d 1139]. Other appellate courts have likewise concluded that a trial court abuses its discretion in finding a change of circumstances predicated solely upon a move to another state. See, *e.g., Clontz v. Clontz* (March 9, 1982), Butler App. No. CA91–02–027, unreported [1992 WL 44979]. * * *

"However, even in those cases which cite this general proposition, the courts have demonstrated a tendency to find that a change of circumstances has occurred if it is shown that the move will have a deleterious effect on the child. In *Clontz*, the Twelfth Appellate District upheld the trial court's finding that a change had been demonstrated, citing the fact that a psychologist had testified that the children would feel more secure if custody were given to the in-state parent. The court also noted that the trial court specifically found that the planned move would affect the 'well-being' of the children.

"In the instant case, similar testimony was presented during the course of the hearing on appellee's motion. Although he did not make any statement as to whether the parties' three children had been actually adversely affected in this instance, the clinical psychologist testified that any child would generally be harmed if a move prevented her from maintaining a close relationship with her extended family.

"While the general validity of the psychologist's testimony cannot be questioned, it is clear that the psychologist made no specific finding that these children had been harmed by the earlier move to California. If this court were to follow the holding in *Clontz*, the custodial parent would lose the presumption that continued custody was in the child's best interest. The loss of that presumption would put the burden of proof on the custodial parent to show that subsequent modification *was not* in the child's best interest, when, in fact, the burden by statute is clearly on the parent seeking a change or modification in custody.

"Thus, this court concludes that when the divorce decree does not place any restriction upon the custodial parent's ability to relocate, and, that parent moves the children to another state, a change of circumstances can only be found if the non-custodial parent demonstrates that actual harm to the child has occurred and that harm overcomes the presumption that continued custody is in the child's best interest.

"Further, since a child is almost always going to be harmed to some extent by being moved, the non-custodial parent should not be able to satisfy his or her burden simply by showing that some harm will result; the amount of harm must transcend the normal and expected problems of adjustment.

"In making this distinction, we would also emphasize that a finding of a change in circumstances would be justifiable if it were established that the primary motive for the move was to restrict the non-custodial parent's ability to visit the children. This court if fully cognizant of the fact that in many instances, this is the sole motivation behind a move by a custodial parent. We would wholeheartedly agree that the courts of this state should not reward this type of behavior by allowing the custodial parent to retain custody in the other state. Such actions would not only demonstrate a change of circumstances, but would also indicate that the best interest of the child would be better served if custody were modified." (Emphasis *sic.*) *Schiavone, supra,* 1993 WL 548034 at *3-4

Based on this interpretation of R.C. 3109.04(E), courts have held that three elements, as earlier stated, must exist before there can be a modification of a shared parenting plan. *Clark, infra.*

As earlier quoted, R.C. 3109.04 clearly indicates that the court should look not only to a change in circumstances of the child, but also to any change that has occurred in the circumstances of either of the parents subject to a shared parenting decree, to determine whether a modification is necessary.

Certainly where, as here, a court is presented with one parent who is subject to a shared parenting decree and has relocated with the child or children some one hundred seventy miles away from the other residential parent, said relocation constitutes a change in the circumstances of either or both parents subject to the shared parenting decree. Thus, we disagree with the trial court's finding that a change of circumstances did not occur. This, however, is only the threshold determination a court must take under consideration. There are two other prongs to the *Clark* test that must be reviewed. Based on the record, we agree with the trial court that a modification of custody would not be in the children's best interests and/or that any harm to the children from a modification of the plan would not be outweighed by the advantages of such modification.

Our review of the record reveals that the trial court correctly applied the legal principles enunciated in the cases outlined above. The trial court determined that appellee's relocation to Columbus was to secure more stable employment and that this was all the more important as she is the only parent who is employed and who can provide health benefits for the children. The trial court also concluded that appellee's continued commitment to drive more than half the distance from Columbus to Youngstown to facilitate the children's visitation with

appellant, "is strong evidence that the move was not made in order to restrict the children's visitation with their father."

Upon finding that the trial court applied the appropriate law to the facts of this case, we now turn our attention to appellant's contention that the trial court abused its discretion in its ruling. Appellant argues that the trial court ignored evidence concerning his disability. He claims that this renders him unable to sit in a vehicle for the three hour trip to Columbus. Appellant also asserts that he will have to stay in a hotel while in Columbus and that the relocation of the children served as a significant disruption in their lives.

This court is not persuaded by appellant's arguments. The record before us, which includes a transcript of the hearing in this matter consisting of more than two hundred and thirty pages, is clear that the trial court considered these factors. While the court heard evidence concerning appellant's disability, it also heard evidence that appellant continues to play golf, continues to wash his car against his doctor's advice, continues to operate an all-terrain vehicle in the woods behind his father's house and has been observed doing yard work and operating a jack hammer.

█ While appellant may dispute some or all of these contentions, such a dispute ultimately leads to the issue of the credibility of the witnesses. Credibility, however, is normally a matter of concern for the trier of fact, jury or court, as the case may be. The demeanor of the witness, the timing of his responses, his facial expressions and the like are matters bearing upon credibility and observable by the trier of fact, but not by an appellate court. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212; *Cross v. Ledford* (1954), 161 Ohio St. 469, 478, 53 O.O. 361, 365, 120 N.E.2d 118, 123–124; *State v. Ferrette* (1985), 18 Ohio St.3d 106, 110, 18 OBR 139, 142–143, 480 N.E.2d 399, 403. Furthermore, it is important to note that ultimately the statutory scheme pertaining to changes in custody is premised upon, and the decisions of the trial court are to be guided by, what is in the best interest of the children. *Glover v. Glover* (1990), 66 Ohio App.3d 724, 586 N.E.2d 159. The conclusions of the trial court in this case clearly demonstrate that this was of paramount concern. Notably, the trial court stated:

"This court concludes that it is not in the best interest of the children to modify their living arrangements at this time, and that a modification of the parenting status would likely cause more harm than advantage."

Nowhere does appellant challenge or assign error to this determination. This court finds that the trial court applied the proper legal principles to this case. Further, the trial court's determination that there was not a *sufficient* change in circumstances to necessitate modification was supported by a substantial amount

of competent and credible evidence. Thus, we are unprepared to say such a determination was unreasonable, arbitrary or unconscionable. Accordingly, appellant's first and second assignments of error are overruled.

For his third assignment of error, appellant states:

"The trial court abused its discretion to the prejudice of the appellant by finding that the appellee relocated to gain job security thereby validating her relocation of the minor children 172 miles away from the appellant."

█ Appellant argues that the trial court's conclusion that appellee moved to Columbus, Ohio, for job security is contradicted by the trial court's own findings of facts and by the transcript of the hearing at issue here. These contradictions, appellant suggests, demonstrates an abuse of discretion that requires this court to reverse the judgment of the trial court and is evidence that appellee's relocation was simply a ploy to deprive appellant of the opportunity to visit with his children. To demonstrate the purported contradictory nature of the trial court's judgment, appellant cites to the trial court's conclusions of law, which found that appellee moved to Columbus, Ohio, in order to gain job security and because she had family living there. Appellant then directs our attention to the trial court's finding that appellee would not have been terminated from her employment.

This court is not impressed with appellant's argument. Preliminarily, this court notes that the trial court's findings of fact are not contradictory to its conclusion of law. Appellee never claimed that she was in imminent danger of being terminated from her position. Rather, appellee testified that her employer was undergoing a major reorganization process that included employees of greater seniority losing their jobs. Appellee testified that she was the sole wage earner and her job provided her and the children with their health insurance coverage. Importantly, appellee testified that she took the position in Columbus, Ohio, because she did not think it was wise to wait until her position was terminated. The trial court also heard testimony from the head of employee relations at appellee's former place of employment who testified that there was a major redesign effort, that many positions were terminated and that even twenty years of seniority would not necessarily be enough to prevent an employee from being laid off.

Based upon this testimony alone, there was a substantial amount of competent and credible evidence before the trial court to dismiss the suggestion that appellee's relocation to Columbus, Ohio, was merely a pretext to minimize appellant's ability to visit the minor children. As the trial court's determination was based on such evidence, this court will not disturb that ruling and appellant's third assignment of error is hereby overruled.

Appellant's fourth assignment of error states:

"The trial court misapplied *Whaley v. Whaley* and *Bechtol v. Bechtol* in considering the harm caused to the children in moving them from their current address after the time of their relocation rather than assessing the harm caused them by moving them from their original residence in Youngstown prior to their relocation."

■ In this assignment of error, appellant argues that the trial court should have considered the harm to the children that allegedly resulted from their relocation from Youngstown, Ohio, to Columbus, Ohio, when conducting the statutory analysis required pursuant to R.C. 3109.04(E)(1). The failure to do so, appellant argues, constitutes an error of law requiring this court to reverse the judgment of the trial court. In support of his argument, appellant claims that the trial court misapplied the holdings in *Whaley v. Whaley* (1978), 61 Ohio App.2d 111, 15 O.O.3d 136, 399 N.E.2d 1270 and *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178.

In its conclusions of law, the trial court cites *Bechtol* for the proposition that it is ill advised to disrupt a pattern of environment for the children. This court detects no error in this proposition of law. The correctness of this principle is buttressed by the existence of a presumption that it is in the best interest of the children to retain the residential parent identified in the original decree. *Birch v. Birch* (1984), 11 Ohio St.3d 85, 11 OBR 327, 463 N.E.2d 1254; *Charles v. Charles* (1985), 23 Ohio App.3d 109, 23 OBR 175, 491 N.E.2d 378.

In its conclusions of law, the trial court cites *Whaley* for the proposition that any change in the residential status of a child should only be approved when the advantages of the change outweigh the harm. Not only is this a correct interpretation of the *Whaley* holding, it is also mandated by R.C. 3109.04(E)(1)(a), which requires the trial court to determine that the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. Appellant, however, argues that the only change of environment occurred when appellee relocated to Columbus. Appellant argues that this change should have been analyzed in a vacuum and that the court should not have also considered the change in environment that *would* have taken place had appellant's motion been granted and he had become the residential parent.

Appellant's argument is not well taken. In *Schiavone v. Antonelli, supra,* the court was confronted with a similar issue. *Schiavone* involved a residential parent and her three children who moved from Trumbull County, Ohio, to California shortly after the divorce decree was granted. The nonresidential parent continued to reside in Trumbull County and moved the court to modify the divorce decree and award him custody of the children. In reversing the trial

court's judgment, the court of appeals explained the nature of the balancing test to be used:

"In relation to the weighing of the harm against the advantages, it is important to remember that it was the proposed custodial change and requisite move back to Trumbull County, and not the earlier move of the children to California, which was to be analyzed by the trial court. We believe that the trial court may have been evaluating appellant's move to California in its analysis, instead of appellee's proposed custody change. In doing so, the court incorrectly placed the burden on appellant, rather that appellee, to demonstrate that the harm was outweighed by the advantage."

Again, we agree with the *Schiavone* analysis. Appellant's original motion sought a change in custody of the children. That change in custody would require a change in environment from the children residing primarily with appellee in Columbus to the children residing primarily with appellant in Youngstown. This was the change in environment, not appellee's relocation, that the trial court was required to, and in fact did, analyze. As such, the trial court applied the correct law and appellant's fourth assignment of error is without merit.

For all of the reasons stated, each of appellant's assignments of error are overruled and the judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, is hereby affirmed.

*Judgment affirmed.*

Cox, P.J. and Gene Donofrio, J., concur.