OPINION
Appellant, Heidi Wood, is appealing from an Ashtabula County Court of Common Pleas judgment entry dated March 31, 2000.
Appellant and appellee, Howard S. Wood, were married on November 7, 1996. They had two children together, twin girls (the "children"), who were born on September 22, 1997. The parties separated on January 18, 1999, when appellant moved out of the marital home. The children remained with their father.
Appellee filed a complaint for divorce on February 4, 1999. On February 5, 1999, the trial court granted appellee temporary custody of the children. In a February 25, 1999, judgment entry, the court ordered appellant to pay child support in the amount of $128.09 per week. A hearing on appellee's complaint was held on March 21, 2000. Subsequent to that hearing, the trial court entered the judgment, which is the subject of the instant appeal. In that judgment entry, the trial court named appellee as the residential parent for the children.
Appellant has filed a timely appeal and makes the following assignments of error:
 "[1.] Whether the trial court erred in not considering the factors set forth in [R.C. 3109.04] in making a custody determination.
 "[2.] Whether the trial court erred in failing to use and attach a child support worksheet in its decision to order appellant to pay child support.
 "[3.] Whether the trial court erred in not awarding appellant's separate property to her."
In her first assignment of error, appellant contends that the trial court failed to properly consider the factors set forth in R.C.3109.04(F)(1) relevant to determining the best interests of the children. We disagree.
A trial court's custody determination is subject to reversal upon a showing that the court committed an abuse of discretion. Miller v.Miller (1988), 37 Ohio St.3d 71, 74. However, the Supreme Court of Ohio has noted that in most custody cases "it is inappropriate * * * for a court of appeals to independently weigh evidence and grant a change of custody. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect * * *." Id.
The burden of producing evidence relating to the factors enumerated in R.C. 3109.04(F)(1) is borne by the movant. In re: Neale (Feb. 6, 1998), Trumbull App. No. 97-T-0084, unreported, at 3, 1998 WL 173001. The trial court need not address every factor in 3109.04(F)(1) in its judgment entry. Meister v. Meister (Nov. 4, 1994), Lake App. No. 92-L-137, unreported, at 3, 1994 WL 642446. It is presumed, in the absence of evidence to the contrary, that the trial court considered the listed factors. Id.; Verbic v. Verbic (Apr. 28, 2000), Portage App. No. 98-P-0133, unreported, at 4, 2000 WL 526107. If "evidence [is] presented on almost every factor" listed in R.C. 3901.04(F)(1), that is "sufficient to indicate that a trial court adequately considered the best interest of the child." In re: Roberts (Nov. 5, 1997), Summit App. No. 18269, unreported, at 3, 1997 Ohio App. LEXIS 4487; contra Dilworth v. Dilworth
(1996), 115 Ohio App.3d 537, 542, fn. 1.
The factors identified in R.C. 3109.04(F)(1) are as follows:
"(a) The wishes of the child's parents regarding his care;
 "(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to his home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 "(g) Whether either parent has failed to make all child support payments * * *;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * * and whether * * * either parent has acted in a manner resulting in a child being an abused or a neglected child.
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
Since the children were less than three years of age at the time the trial court entered its judgment, factor (b) is not relevant, and neither party presented evidence pertaining to factors (f) and (h). With respect to factor (a), both parents testified as to their wishes regarding the care of the children. Factors (c) and (d) were addressed in testimony that the children interacted well with their parents, and were seemingly well adjusted. There was conflicting testimony concerning factor (f) as to the extent appellee cooperated in facilitating visitation; however, it was not unreasonable for the trial court to conclude from that testimony that appellee had substantially complied with his obligation to make the children available to appellant. Appellee's testimony that appellant had made no child support payments through the child support enforcement agency, in spite of a court order, was relevant to factor (g). With respect to factor (i), the testimony indicated that appellee made the children available to appellant Monday through Friday from 10:00 a.m. until 4:00 p.m. Finally, regarding factor (j), the testimony revealed that both parents reside in Ohio; neither parent indicated that they intended to establish a residence outside of this state.
Based on the foregoing, we conclude that sufficient evidence was presented to allow the trial court to adequately consider the relevant factors listed in R.C. 3109.04(F)(1); therefore, the trial court did not commit an abuse of discretion in naming appellee as the residential parent. In its judgment entry, the trial court specifically referenced R.C. 3109.04(F)(1). The court found that appellee was "more likely to honor and facilitate visitation and companion rights * * *." The court also noted that appellee had had exclusive possession of the children since January 1999. Implicit in this observation is the fact that it would be potentially disruptive to the children for the court to designate a new residential parent.
Appellant contends that the fact that appellee currently has custody of the children should not be considered as a factor. However, this court stated in Chavez v. Sanderson-Chavez (Mar. 11, 1999), Lake App. No. 98-L-037, unreported, at 9, 1999 WL 262170:
 "It is true that the magistrate noted in her written decision that the children had lived in appellee's home since January 1997. Although the magistrate did make reference to this fact, it was certainly not per se error to do so. We do not believe that it was somehow improper for the magistrate to observe that the children's lives would maintain a certain continuity if appellee were named as the primary residential parent." (Emphasis sic.)
In the case at hand, we find no error on the part of the trial court for referring to the fact that the children have been in the custody of appellee since their parents separated.[1] For the foregoing reasons, we hold that the appellant's first assignment of error lacks merit.
In her second assignment of error, appellant asserts that the trial court failed to use the child support worksheet mandated by R.C. 3113.215, and that such failure is reversible error. We agree.
In Marker v. Grimm (1992), 65 Ohio St.3d 139, paragraph one of the syllabus, the Supreme Court of Ohio held that "[a] child support computation worksheet * * * must actually be completed and made a part of the trial court's record." In the instant case, there is no reference in the record to such a worksheet having been completed. Therefore, appellant's second assignment of error is well taken.
In her third assignment of error, appellant contends that the trial court improperly awarded her separate property to appellee. We agree.
At the hearing on appellant's complaint for divorce, appellee admitted in his testimony that appellant had brought a refrigerator, a washer, and a dryer to the marriage. Pursuant to R.C. 3105.171(A)(6)(a), "separate property" is defined as "[a]ny real or personal property * * * that was acquired by one spouse prior to the date of the marriage." It is undisputed that the appliances at issue were acquired by appellant prior to the marriage, and, therefore, constitute her separate property. If a trial court fails to disburse a spouse's separate property to that spouse, it must "make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be distributed to that spouse." R.C. 3105.171. The circumstances under which it would be appropriate to award appellant's separate property to appellee are identified in R.C. 3105.171(E)(1), (2) and (3). Since the trial court failed to make the requisite written findings, appellant's third assignment of error is well taken.
For the foregoing reasons, the trial court's judgment is affirmed in part, with respect to the custody issues, and, reversed in part, with respect to the trial court's child support determination and property division. This matter is remanded to the Ashtabula County Court of Common Pleas for further proceedings in accordance with this opinion.
 ____________________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J., GRENDELL, J., concur.
[1] Appellant suggests in her brief that "[s]he would rather the children be with her than with a caretaker * * *." Appellee testified that he had requested that appellant watch the children from 6:30 a.m. to 4:00 p.m. However, appellant refused, requiring appellee to hire a babysitter from 6:30 a.m. until 10:00 a.m., at which time appellant picked up the children from the babysitter. The following exchange, between appellee's attorney and appellant, belies appellant's assertion that she would prefer the children be with her rather than a caretaker:
 "Q Now * * * you get up at 7:00, 7:30 to watch someone else's child at 8:00 A.M., but isn't it true that you have got your children over at another day care provider till at least 10:00 A.M.?
"A Not by my choice.
 "Q Hasn't Howard asked you to watch the children during those hours? Yes or no?
"A Yes.
"Q And, in fact, you've refused to do that?
* * *
"A I gave Howard a choice.
 "Q You gave him a choice: If he didn't go along with you having the children at night, you didn't want to take care of the children in the morning; isn't that correct?
 "A Because I didn't want to be their baby-sitter. I wanted to be their mother.
"* * *
 "Q And you realize by doing that he's incurring a child care expense every morning of the weekday?
"A By his choice."