OPINION
{¶ 1} These are appeals from five separate orders of the domestic relations court concerning the relocation and custody of Jonathan Schaeffer, the son of Michael W. Schaeffer, the plaintiff-appellee, and Linda B. Schaeffer, the defendant-appellant. The majority of the orders arose during a period in which Linda Schaeffer, who had been awarded custody of Jonathan upon the couple's divorce, attempted to relocate with her son to San Francisco to pursue a new career as a perfusion specialist. Informed that she had taken Jonathan to San Francisco and enrolled him in school while the court was still considering her request to relocate, the court ordered Linda Schaeffer to return Jonathan to Ohio and held her in contempt for removing the child from the jurisdiction. The court further denied her motion to relocate, reallocated custody to Michael Schaeffer, and then, ultimately, following the mother and child's return to Ohio, designated Michael Schaeffer the permanent residential parent and legal custodian of Michael dependent upon the outcome of these appeals.
 {¶ 2} For the following reasons, we affirm the trial court's orders concerning the relocation and return of Jonathan from San Francisco that are the subject of appeal numbers C-020721, C-020722, and C-020723, as well as the trial court's latest contempt order resulting from Linda Schaeffer's more recent attempt to relocate Jonathan to New York, which is the subject of appeal number C-030385. But because of the trial court's failure to make the necessary findings to justify a change of permanent custody, we reverse that part of the trial court's March 3, 2003, parenting order and remand this matter to the trial court for further findings in appeal number C-030255.
 {¶ 3} The following procedural history is relevant here. Jonathan was born on March 30, 1997. The parties were divorced on April 6, 2001, or just after Jonathan's fourth birthday. Linda Schaeffer was designated the residential parent and legal custodian of Jonathan. Michael Schaeffer was allocated parenting time. The divorce decree expressly provided that Linda Schaeffer would "not remove Jonathan from this Court's jurisdiction for the purpose of establishing a residency with Jonathan without prior written consent of Father or a court order permitting said removal."
 {¶ 4} Linda Schaeffer was a respiratory technician at The Christ Hospital in 2002, earning approximately $35,000 per year. Michael was a medical intern with approximately five years left on his residency. To enhance her earning potential as a single parent, Linda decided to attend a 21-month course to become a perfusion specialist, knowing at the time that the market for such jobs was highly competitive and that even upon graduation she could not sit for the certifying examination until she had handled fifty cases.
 {¶ 5} When Linda Schaeffer graduated, she was not successful, despite an apparently exhaustive search, in finding any jobs for a perfusion specialist in Cincinnati, as she apparently had, or should have, expected. Rather than remaining in town and working as a respiratory therapist, she chose to accept an offer of employment as a perfusionist in San Francisco, California, earning a base salary of $69,000. Augmented by overtime and on-call pay, her annual income was expected to reach $114,000. Understandably, she found the offer simply too attractive to resist.
 {¶ 6} On June 26, 2002, Linda moved the domestic relations court for permission to relocate Jonathan to San Francisco. She cited as the reason for the relocation the fact that she had been offered a position of employment as a perfusionist with Kaiser Permanente Medical Center. She attached an affidavit outlining the economic advantages of the new position and stating also that she would work the day shift, thus enabling her to spend evenings with Jonathan. Although couching the motion in terms of a prospective move, she attached a letter from Kaiser, dated June 24, 2002, in which the Administrative Director of Cardiac Services expressed her delight that Linda had "agreed to join our Perfusion Team starting July 29, 2002." The motion concluded by stating that time was of the essence.
 {¶ 7} Michael Schaeffer responded to the motion by moving the court on July 18, 2002, to designate him as the residential parent and legal custodian of Jonathan. Citing his ex-wife's desire to relocate to San Francisco, Michael alleged that this would constitute a change of circumstances that, together with his ex-wife's conduct in interfering with his parenting time, justified the custody change.
 {¶ 8} The court held a hearing on the motions on October 4, 2002, which was attended by both parties and their legal representatives, and took the matters under submission. The court's intention to reach a decision within a week, as expressed to the parties, was frustrated due to a family loss and a heart attack suffered by the court's bailiff. On October 18, 2002, before the court had issued its decision, Linda Schaeffer felt compelled by time constraints to go to San Francisco with Jonathan. She later stipulated that it was her intention to establish residency for Jonathan in California pending the court's decision on her motion to relocate. Michael Schaeffer, however, alleged that he was given absolutely no notice that his son was being taken from Ohio. He alleged that Linda had engaged in a deliberate ruse to conceal their son's whereabouts, informing him by telephone message that she was taking Jonathan "home," which he assumed to mean her parents' home in New York. During this period, Michael was understandably concerned about his son's whereabouts and conducted what his appellate counsel has described as a "frantic search" to discover where his mother had taken him.
 {¶ 9} On October 22, 2002, the court issued its order denying the motion to relocate Jonathan. The next day, the court issued another order determining that Michael Schaeffer's motion for reallocation of parenting was moot since it had been based on Linda's desire to remove Jonathan to California, but the court did increase Michael's parenting time. Linda Schaeffer's counsel represented that his office advised his client of the two decisions on October 23. The parties stipulated that on the same date Linda advised her ex-husband by telephone that she had made arrangements to return with Jonathan to Ohio on October 25. Prior to their return, however, Michael, apparently mistrusting his wife, informed the court of the situation and made what the court later characterized as an oral emergency request for an order to have Jonathan returned to the jurisdiction. Accordingly, on October 24, 2002, the court journalized an entry ordering Linda Schaeffer to return Jonathan "forthwith" to Michael Schaeffer and extending Michael's parenting time so that Jonathan would reside with his father upon his return. Despite language in the order that it was being issued "ex parte," the court later stated on the record that it had specifically requested and conducted a conference call with counsel for both parties concerning the matter. Although Linda Schaeffer's designated counsel was outside the country at the time, the court stated that another attorney from his office acted on her behalf.
 {¶ 10} Linda Schaeffer subsequently returned to San Francisco and her new job. Jonathan resided with his father until a hearing was held on February 26, 2003, at which time both parties appeared and were represented by counsel. At the hearing, the parties stipulated many of the facts previously recited. On that same day, the court issued an order terminating the withholding of Michael Schaeffer's support obligation by his employer. On March 3, 2003, a parenting order was issued that designated Michael Schaeffer the temporary and permanent residential and legal custodian of Jonathan subject to the outcome of Linda Schaeffer's appeals of the court's various orders, as well as granting Linda Schaeffer scheduled parenting time. Linda was also found in contempt for her removal of Jonathan from the court's jurisdiction, but the court determined that she had purged herself of the contempt by returning him on October 25, 2003. The court further awarded Michael Schaeffer $1,036 in attorney and filing fees.
 {¶ 11} Matters did not end there. As noted, Michael's Schaeffer's custodianship of Jonathan was made only temporary until his ex-wife had exhausted her right to appeal the trial court's orders. In appeal number C-020721, she now challenges the court's October 22, 2003, order denying her motion to relocate. In appeal number C-020722, she challenges the court's October 23, 2003, order denying Michael Schaeffer's motion to reallocate parental rights but increasing his parenting time. In appeal number C-020723, she challenges the court's October 24, 2003, order that she return Jonathan "forthwith" from San Francisco and that Michael Schaeffer's parenting time be extended so that Jonathan could reside with him. And in appeal number C-030255, she challenges the court's February 26, 2003, and March 3, 2003, orders.
 {¶ 12} This court, in turn, has granted Linda Schaeffer's motion to consolidate the first three appeals. Further, by order dated April 2, 2003, this court has granted her request to stay all of the trial court's October 2003 orders pending the outcome of the appeals numbered C-020721, C-020722, and C-020723.
 {¶ 13} On April 21, 2002, Michael Schaeffer moved the court to require his ex-wife to immediately return Jonathan and to hold her contempt. He alleged that Linda Schaeffer had taken custody of Jonathan over spring break and had failed to return him. A hearing was held on May 15, 2003, at which both Michael and Linda Schaeffer were present. Michael Schaeffer alleged that Linda had taken Jonathan to New York to his maternal grandparents' house and that she had refused to comply with his request for Jonathan's return. Counsel for Linda stipulated that that was indeed the case, and that he had requested of his client that she appear at the hearing with the child, as instructed by the court, but that she had not done so. Linda Schaeffer stated on the record that she had moved her residence to New York as of April 12, 2003, having lost her job in San Francisco as a perfusionist. Linda Schaeffer's counsel argued that she had taken Jonathan "under the color of authority" of this court's April 4, 2003, order staying the trial court's October 2003 orders. Although admitting that the February and March 2003 parenting orders had not been the subject of that stay, counsel argued that Linda Schaeffer's appellate attorney had filed a motion to stay those orders as well, and that his client had acted under a legitimate belief that the orders would be stayed.
 {¶ 14} The trial court found Linda Schaeffer in violation of both the decree and the unstayed March 3, 2003, parenting order. The court therefore found her in contempt and threatened thirty days' incarceration if she did not purge the contempt by returning Jonathan to his father's care by May 19, 2003, at 8:00 a.m. The court also awarded Michael Schaeffer $1, 213.50 in attorney fees and court costs.
 {¶ 15} Linda Schaeffer has appealed the trial court's May 15, 2003, orders in appeal number C-030385. This appeal and the appeal numbered C-030355 have been consolidated with the three earlier appeals. This court has denied Linda's motion to stay the orders that are the subject of the later two appeals.
 FIRST ASSIGNMENT OF ERROR {¶ 16} In her first assignment of error, Linda Schaeffer argues that she was denied due process because the hearings in the trial court were not "meaningful" in the constitutional sense. The order of which she "principally complains" is that issued by the court on October 24, 2002. The trial court issued the order after it had been informed that Linda had (while her motion to relocate was still under submission) taken Jonathan out of the jurisdiction to San Francisco for the purpose of establishing residency and enrolling him in school. As noted, the order stated that it was issued ex parte, but the trial court explained at the subsequent hearing that it had consulted by conference call with both counsel for Michael Schaeffer and counsel from the office representing Linda Schaeffer concerning its action. At that hearing, trial counsel for Linda Schaeffer actually apologized to the court and clearly retracted any statements he may have made suggesting that the court had acted improperly.
 {¶ 17} We agree with Michael Schaeffer that the facts here do not provide any basis to conclude that Linda Schaeffer was not meaningfully heard on the subject of relocation. The merits of her motion to relocate were fully briefed and argued at the October 4, 2002, hearing, at which she was present and represented by counsel. Her problem arose when she took Jonathan — in clear violation of the express terms of the divorce decree — outside the jurisdiction before the court could reach a decision on the motion. As noted by Michael Schaeffer, the court's order did not, as Linda Schaeffer states in her brief, reallocate parental rights. The order simply required that Linda Schaeffer return Jonathan to Ohio, and thus into the temporary care of Michael, as it was rather obvious at that point that she had accepted the job in San Francisco and was intending to reside there regardless of the court's decision on the motion to relocate.
 {¶ 18} We also fail to perceive how a reversal of the trial court's order to return Jonathan from San Francisco in October of 2003 would be in any way advantageous to Linda Schaeffer now. The effect of that order has been mooted by other circumstances, the most obvious of which is the court's March 3, 2003, order modifying the original custody decree and reallocating Michael Schaeffer residential custody subject to the outcome of these appeals. Linda Schaeffer has since lost her job in San Francisco, now resides in New York, and apparently wants to relocate Jonathan there. To do so, she would have to succeed in overturning the court's March 3, 2003, parenting order and then file an entirely new motion to relocate. The October 24, 2002, order mandating Jonathan's return from San Francisco would appear at this date to no longer have any legal bearing on this case.
 SECOND ASSIGNMENT OF ERROR {¶ 19} In her second assignment of error, Linda Schaeffer argues that the trial court, by ordering that Jonathan would reside with Michael while she went to San Francisco, "effectively changed custody from Linda to Michael." She also claims that the trial court, in its March 3, 2003, order granting Michael's motion for a change of custody, committed reversible error by failing to make any express findings on whether there had been a change in circumstances and whether a custody change would have been in Jonathan's best interests. Michael Schaeffer responds that the law does not require such express findings, and that if Linda Schaeffer wanted such findings, she could have requested them under Civ.R. 52.
 {¶ 20} When there is competent and credible evidence to support the trial court's decision concerning child custody, that decision will not be overturned absent an abuse of discretion.Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus. The trial court's determination is entitled to the "utmost respect," and a reviewing court must be deferential to the trial court's unique position to observe the witnesses and parties to a custody proceeding, so much so that the law accords its determination a presumption of correctness. Miller v.Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. A reviewing court does not have the prerogative of substituting its judgment for that of the trial court simply because it disagrees with the decision reached. Rather, a reviewing court may only disturb the trial court's judgment when it is arbitrary, unreasonable, or unconscionable. Rohrbaugh v. Rohrbaugh (2000),136 Ohio App.3d 599, 603, 737 N.E.2d 551.
 {¶ 21} R.C. 3109.04(E)(1)(a) and (ii) provide that "[t]he court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds"
(emphasis supplied) all of the following: (1) that a change in circumstances has occurred, (2) that the modification would be in the child's best interests given the change, and (3) that any harm from such a change would be outweighed by the advantages to the child. Id. at 604, 737 N.E.2d 551. According to Ohio decisional law, a change in circumstances must be an event or an occurrence that is "substantiated, continuing, and [causing] a materially adverse effect upon a child." Wyss v. Wyss (1982),3 Ohio App.3d 412, 416, 445 N.E.2d 1153. Although a child's best interests elude statutory definition, R.C. 3109.04(F)(1) sets forth a non-exhaustive list of factors to be considered, including, for example, the wishes of the child, the child's interrelationship with his parents, which parent is more likely to facilitate court-approved parenting time, whether one of the parents is planning to establish a residence outside of the state, and whether one of the parents has willfully denied the other his or her right to parenting time.
 {¶ 22} Although a change of location is not, by itself, sufficient to constitute a change of circumstances, a change of location may be considered such if it is shown that the move will have a harmful effect on the child's psyche or emotional development. Rohrbaugh, supra, at 605, 737 N.E.2d 551. Simply put, each case must be considered on its own merits. Significantly, R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by the divorce decree is in the child's best interest.
 {¶ 23} In this case, the trial court ruled on Michael Schaeffer's December 20, 2002, motion for a change of custody in its March 3, 2004, parenting order. As even counsel for Michael Schaeffer is willing to concede, the court did not make any express findings relevant to a change in circumstances or the best interests of Jonathan. Rather, the court simply stated that it was reallocating residential and legal custody of Jonathan to Michael Schaeffer subject to the appeals process, and it then set forth a schedule of parenting time for Linda Schaeffer.
 {¶ 24} As noted, Michael Schaeffer discounts the trial court's omission by pointing out that R.C. 3109.04(E)(1)(a) does not explicitly require a specific protocol for the court's findings, but provides only that the court shall make certain findings before modifying custody. He argues that where the record is silent, we should presume regularity, meaning that we should infer from the fact that the court modified custody that it had made the required statutory findings sub silentio. In his view, if Linda Schaeffer wished more explicit findings, it was incumbent on her to file a motion for findings of fact and conclusions of law under Civ.R. 52, and her failure to do so waived the issue.
 {¶ 25} To support his position, Michael Schaeffer citesWerden v. Crawford, (1982), 70 Ohio St.2d 122, 419 N.E.2d 424. In Werden, the trial court, after ordering a change of custody, denied the mother's request for findings of fact and conclusions of law based upon its view that Civ.R. 52 did not apply when the parties were before the court on motions. The Ohio Supreme Court disagreed, holding that compliance with Civ.R. 52 was "mandatory in any situation in which questions of fact are tried by the court without intervention of a jury" — and that such was the case in custody proceedings, which required the court to make factual determinations. Id. at 124, 419 N.E.2d 424.
 {¶ 26} In our view, Werden stands for the limited proposition that when a party asks the trial court for detailed findings of facts and conclusions of law — for example, on the presence or absence of any of the relevant factors set forth in R.C. 3109.04(F)(1) — the trial court has no choice but to comply. The case, however, does not stand for the broader proposition that the court can change permanent custody without even referring to the threshold findings it is required to make under R.C. 3109.04(E)(1) — i.e., that there has been a change of circumstances, that a modification is in the best interests of the child, and that the benefits of such a change outweigh any ill effects the child might experience.
 {¶ 27} We note further that the purpose of the findings required by R.C. 3109.04(E)(1) is not to serve the adversarial interests of the parents as they fight over custody of their offspring. Findings under the statute are not points to be won or lost as a matter of contest. Rather, the purpose of the required findings is to insure that whatever action is taken is taken in the best interests of the child, who is not a named party and, unless appointed a guardian ad litem, is not separately represented. The state, it must be remembered, has its own interest, apart from that of the parents, in the outcome of any custody dispute in its role of parens patriae, which is based upon the sovereign's prerogative to protect those who are too young or who are otherwise unable to protect themselves. It would be incongruous to hold that the trial court should be relieved of making any findings under a statute designed to protect the child based upon an adult party's failure to make a post-hearing procedural request for findings of fact and conclusions of law under Civ.R. 52.
 {¶ 28} Michael Schaeffer's best argument, it seems to us, is one that compares R.C. 3109.04(E)(1) with other statutes that explicitly require the court to make express findings. For example, R.C. 3119.22 allows the court to deviate from the basic child-support schedule, but if it does, the statute also requires the court to enter in its journal "its determination that the amount [of support] would be unjust or inappropriate and would not be in the best interest of the child * * * and findings of fact supporting that determination." R.C. 3119.24 allows the court the same latitude in shared-parenting provisions but again requires the court to make its determinations on the record. In the area of sentencing (which, we hasten to point out, we do not mean to equate with parenting), a trial court must impose the minimum sentence unless it "finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime * * *." R.C. 2929.14(B)(2) (emphasis supplied).
 {¶ 29} As can be seen, the legislature has chosen at times to make explicit the requirement that the court not only make, but make on the record, certain statutory findings, and it has also required the court to make additional findings of fact to support those findings. The argument is compelling, therefore, that when the legislature does not make explicit such a requirement, its intent is that there be no such requirement. The question is ultimately one of determining legislative purpose.
 {¶ 30} Where the meaning of a statute is unambiguous, it must be applied as written. State ex rel. Savarese v. Buckeye LocalSchool Dist. Bd. of Edn., 74 Ohio St.3d 543, 1996-Ohio-291,660 N.E.2d 463. But where the statutory language is susceptible to different interpretations, construction is necessary to resolve the ambiguity. State ex rel. Toledo Edison Co. v. Clyde,76 Ohio St.3d 508, 513-514, 1996-Ohio-376, 668 N.E.2d 498. When construing an ambiguous statute, the court may consider several factors, including the object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of the particular construction. R.C. 1.49; State v. Jordan, 89 Ohio St.3d 488,492, 2000-Ohio-225, 733 N.E.2d 601.
 {¶ 31} Neither party has cited any relevant legislative history, and we ourselves have found none. The purpose of R.C.3109.04 is to secure the best interests of the child while providing a vehicle whereby the court may respond to a change of circumstances justifying a modification of the original custody decree. The Ohio Supreme Court has stated that, in the interpretation of R.C. 3109.04, "`there is no question that the paramount and overriding concern of the * * * statute is the best interest of the child * * * or children * * * and it is the court's function to see that the children's best interests are protected.'" Gardini v. Moyer (1991), 61 Ohio St.3d 479, 484,575 N.E.2d 423, quoting Birch v. Birch (1984),11 Ohio St.3d 85, 87, 463 N.E.2d 1254. As noted, the statute imposes a presumption that the best interests of the child are served by maintaining the parenting status quo, thus evidencing an intent that the child not be subjected to the emotional upheaval and difficulties of adjusting to a change of custody unless the circumstances clearly dictate that it would be in his or her long-term best interest.
 {¶ 32} Here, both parties have argued the consequences of requiring or not requiring express findings. During oral argument, counsel for Michael Schaeffer advanced the position that to require express finding would impose an unnecessary burden on the trial courts, which, he asserted, routinely fail to make such findings. It has not been our experience, however, based upon the records we have reviewed in this area, that the trial courts routinely modify custody without any reference whatsoever to the criteria found in R.C. 3109.04(E)(1). Indeed, our experience has been to the contrary — that trial courts normally do address the statutory factors in varying degrees. For example, in a case cited by Michael Schaeffer to support the change of custody in this case, Kubin v. Kubin (Sept. 18, 2000), 12th Dist. No. CAA99-120, it is clear from the appellate court's discussion that the trial court made numerous express findings, including that there had been a change of circumstances, that the modification of custody was in the child's best interest, that the advantages of a change outweighed the disadvantages, that the father's career aspirations as a jet pilot would cause the child to experience several short-term moves, and that the current custodial parent would not encourage visitation.
 {¶ 33} Linda Schaeffer, on the other hand, cites the case ofDilworth v. Dilworth (1996), 115 Ohio App.3d 537,685 N.E.2d 847, for the proposition that it is reversible error for the trial court to modify custody without first making express findings under R.C. 3109.04. In Dilworth, the trial court specifically found that its order denying the parents the right to permit an overnight romantic guest in their house while their children were present was not a modification of the existing custody order for the purposes of R.C. 3109.04. Consequently, the court did not make any of the statutory findings because it presumed that it did not have to. The appellate court reversed, holding that such an order was a modification of the existing custody order and thus subject to the statutory requirements. Id. at 541, 685 N.E.2d 847. Although acknowledging the trial court's "extraordinary discretion" in custody matters, the appellate court stated that it could not "be reasonably sure that the trial court would have entered the same order had it understood that the statute was applicable." Id. The appellate court thus reversed and remanded the case to the trial court with instructions to "render a decision based on the requisite findings set forth in R.C. 3109.04(E)(1)(a) * * *." Id. at 542,685 N.E.2d 847. Indeed, the appellate court took the far stricter view that the trial court was required to make findings pertaining to each of the factors set forth in subsection (F)(1). Id. at 541, 542, 685 N.E.2d 847, fn. 1.
 {¶ 34} We hold that the trial court's failure to make even the most barebones findings to support the modification of the existing custody decree here did not comport with the requirements of R.C. 3109.04. Although Civ.R. 52 applies when findings are requested by the parties, the absence of such a request does not obviate the court's statutory obligation to make findings, and without such findings we cannot be reasonably sure that the trial court went through the appropriate legal analysis to protect the interests of Jonathan before modifying the existing custody decree. Linda Schaeffer argues, with some cogency, that without findings under R.C. 3109.04 we can never be sure that the court's decision to allocate custody was in some measure the result of its desire to punish her for her previous contempt in removing the child from the jurisdiction in clear violation of the divorce decree.
 {¶ 35} In reaching our holding that a trial court must make findings under R.C. 3109.04(E)(1) before modifying an existing custody decree, we acknowledge that the statute is, as we have discussed, different from others in which the legislature has explicitly required the trial court to make findings on the record. But we do not believe that it was the intent of the legislature to require express findings in matters of child support, for example, and not in the matter of child custody, which strikes even more deeply at the basic fundamental rights of a parent. As the Ohio Supreme Court has noted in dependency and neglect actions, parental custody of a child is an important legal right invoking a fundamental liberty interest. In reMurray (1990) 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. If the best interests of the child are to be considered paramount in construing the statute, see Moyer, supra, and it is the duty of the trial court — and, by extension, this court — to protect those interests, we consider it mandatory that the trial court lay out the requisite statutory findings so that as an appellate court we may be certain that the action being taken was designed to serve those interests.
 {¶ 36} The requirement of findings does not in any way diminish the trial court's broad discretion in determining custody. Nothing in this decision should be read to that effect. We acknowledge that there is evidence in this case that would support a modification of custody. But we hold that to do so the court must render a decision that is expressly based on the requisite findings contained in R.C. 3109.04(E)(1).
 THIRD ASSIGNMENT OF ERROR {¶ 37} In her third assignment of error, Linda Schaeffer argues that the trial court erred to her prejudice in overruling her motion to relocate Jonathan to San Francisco, California. We fail to see, however, why this issue is not now moot in light of the parties' acknowledgement that Linda Schaeffer no longer has employment in San Francisco as a perfusionist and in fact resides with her parents in New York, where she is apparently now determined to relocate Jonathan. The economic advantages that, she argues, justified her attempt to move to San Francisco clearly no longer exist. The only effect of appellate review now would be to arguably sanction a move in the future if a similar position at essentially the same pay might arise. It is well settled, however, that appellate courts do not grant advisory opinions or prospective relief, and we decline the invitation to do so now.
 FOURTH AND FIFTH ASSIGNMENTS OF ERROR {¶ 38} In the fourth and fifth assignments of error, Linda Schaeffer argues that the trial court's two contempt orders were "contrary to law, to the manifest weight of the evidence, and to [her] right to due process of law." We disagree.
 {¶ 39} Linda Schaeffer argues that she lacked any intent to violate the trial court's orders when, on October 18, 2002, she took Jonathan to San Francisco for the purpose of establishing his residency and enrolling him in school. As noted, her motion to relocate Jonathan was heard on October 4, 2002, and not denied until October 22, 2002. In her view, the fact that she was prepared to bring Jonathan back to Ohio should the motion have failed absolved her of any intent to challenge the court's authority. This argument completely ignores the fact, however, that the divorce decree, which was still in effect during the pendency of the motion, clearly forbade her from removing Jonathan from the court's jurisdiction for the purposes of establishing residency before securing either the court's permission or her ex-husband's permission. The fact that she filed the relocation motion before attempting to relocate Jonathan demonstrates that she was well aware of this provision of the divorce decree. Nowhere in the record do we find any indication that she received errant advice from her trial counsel that this restraint was somehow lifted while the motion was pending. Her decision to put Jonathan on the plane to San Francisco was clearly an intentional act.
 {¶ 40} Similarly, Linda Schaeffer argues that she did not intentionally challenge the court's authority when she most recently took Jonathan to New York without first obtaining permission from either the court or her ex-husband She argues that she was operating under the legitimate belief that this court would stay the trial court's March 3, 2003, parenting order, as it had done with the trial court's orders in the first three appeals. This argument is groundless, however, because no stays had been granted — and were not granted — and because, regardless of any stay issued or potentially issued, the divorce decree still clearly prohibited her from relocating Jonathan to New York without first obtaining the permission of either the court or her ex-husband
 {¶ 41} Linda Schaeffer's fourth and fifth assignments of error are overruled.
 CONCLUSION {¶ 42} The judgment of the trial court is affirmed in appeals numbers C-020721, C-020722, C-020723, and C-030385. The judgment of the court in appeal number C-030255 as it pertains to the modification of permanent custody is reversed, and the case is remanded to the trial court to make the requisite findings set forth in R.C. 3109.04.
Judgment accordingly.
Sundermann, P.J., and Doan, J., concur.