OPINION
Joseph T. Corradi ("Appellant"), appeals the judgment of the Mahoning County Court of Common Pleas, Domestic Relations Division, granting his divorce from Ines F. Corradi ("Appellee"), setting out a shared parenting plan, and imposing child support. Appellee filed a cross-appeal, also challenging the judgment. After reviewing the trial court's decision and the record as a whole, this Court affirms the trial court decision.
The parties were married on December 26, 1993. During the marriage the couple had two children, Joseph (d.o.b. 8/21/94) and Alessandra (d.o.b. 7/25/96).
Appellant filed for divorce on February 18, 1999. The parties stipulated to several issues, including the division of personal property, bills and obligations, pensions, and attorney fees. The matter proceeded to trial on the contested issues of child custody, child support and spousal support.
On January 16, 2001, in a lengthy order detailing its findings of fact and conclusions of law, the trial court issued a divorce decree. The trial court adopted a shared parenting plan and ordered that Appellant pay child support in the amount of $387.93 biweekly. The court also determined that spousal support was not appropriate.
Appellant filed a notice of appeal on February 7, 2001, and Appellee's notice of cross-appeal followed on February 12, 2001.
In his first assignment of error Appellant states as follows:
 "THE TRIAL COURT ERRED IN ADOPTING DEFENDANT'S PROPOSED SHARED PARENTING PLAN AFTER ALREADY HAVING REJECTED SAME BY CONCLUDING THAT SAID PLAN WAS NOT IN THE BEST INTEREST OF THE CHILDREN."
Appellant complains that the trial court erred when it adopted Appellee's shared parenting plan because it was identical to one the court had previously rejected. Further, Appellant maintains that the plan he submitted had been recommended by the guardian ad litem, and that in refusing to adopt it, the trial court failed to accord the guardian ad litem the deference to which her recommendations are entitled.
As demonstrated in the discussion that follows, this assignment of error is not only baseless, but it fails to accurately reflect the trial court's findings.
The trial court is vested with broad discretion to decide matters relating to the allocation of parental rights and responsibilities for the care of minor children, and its decision is subject to reversal only upon a showing of an abuse of that discretion. Miller v. Miller (1988),37 Ohio St.3d 71, 74; and Rohrbaugh v. Rohrbaugh (2000),136 Ohio App.3d 599. An abuse of discretion connotes more than an error of law or judgment; it implies the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
In determining whether shared parenting is in the best interest of the children, the court must consider all relevant factors, including, among others, the factors enumerated in R.C. § 3109.04(F)(1), the factors enumerated in R.C. § 3119.23, and all of the following:
 "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnaping by either parent;
 "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." R.C. 3109.04(F)(2).
When it ruled that shared parenting was appropriate in the instant case, the trial court acknowledged that the parties had difficulty getting along. Nevertheless, the court found that when addressing issues surrounding the children, the parties were willing to put aside their personal disagreements and cooperate.
The court observed that the parties already had in place a de facto shared parenting arrangement that had worked reasonably well. The parties appeared to be fostering good relationships between the children and the other parent. There was no indication of child or spousal abuse and the parties maintained living arrangements in close enough proximity to each other to facilitate a joint parenting arrangement.
The court also cited the fact that the guardian ad litem had recommended a shared parenting plan.
In determining the children's best interest, a trial court is to consider the following factors:
"(a) The wishes of the child's parents * * *;
 "(b) If the court has interviewed the child in chambers * * *, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 "(d) The child's adjustment to the child's home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 "(g) Whether either parent has failed to make all child support payments, * * *;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).
The trial court's order and its detailed findings reflects that it analyzed the aforementioned factors and concluded that shared parenting was in the best interest of the children.
Once the court found that shared parenting was in the best interest of the children, it then had to chose the appropriate plan. At the trial court's request, the parties submitted shared parenting plans.
Ultimately the court adopted a shared parenting plan that Appellee submitted on December 12, 2001. The court found that Appellee's December 12th plan was the most similar to the one the parties were already using. The court determined that this plan, which runs in two week cycles to accommodate Appellant's alternating long and short work weeks, furthered the children's best interests because it was the least disruptive and allowed Appellant to enjoy frequent and continuous contact with them.
Appellant now essentially maintains that the visitation that he receives under this plan is inadequate. Appellant also argues that by modifying certain scheduling language in the shared parenting order, the trial court improperly created its own shared parenting plan. The record reflects that the December 12th plan contained an incomplete provision that read, "Commencing the ___ day of ___, 200_ the Court's Standard Order of Parenting and Companionship/Visitation shall become applicable." Apparently noting that the order failed to include a time frame during which the order was effective, the court crossed out the sentence quoted above and typed in the following: "Said residence and Parenting shall be effective, all until further order of the Court." (Findings of Fact and Conclusions of Law, Jan. 16, 2001; Exh. A., p. 3).
Although the trial court lacks the authority to sua sponte create a shared parenting plan, that is not what occurred in this matter. Piwinskiv. Piwinski (March 18, 1999), 8th Dist. No. 73956 (and cases cited therein). The alteration to which Appellant directs this Court is not substantive, nor does it materially affect the parties or the children. Appellee left the date open in her plan. The court, instead of randomly picking a date for the plan to end, simply stated that it retained jurisdiction to decide this issue if it comes up in the future. This Court declines to treat such a ministerial change as if it were the creation of a new shared parenting plan.
Morever, this Court notes that, contrary to Appellant's claim, the December 12th plan was not previously rejected by the trial court. The court had only asked that the parties modify the December 12th order in accordance with its rulings. At no time did the court advise the parties that it was rejecting the December 12th plan, nor did it find that the December 12th plan was not in the children's best interest.
Finally, we are compelled to remark that Appellant's assertion that the court failed to follow the recommendation of the guardian ad litem is misleading. The guardian ad litem did not specifically recommend that the trial court adopt Appellant's shared parenting plan as Appellant claims. The guardian ad litem recommended shared parenting. (Tr. 475). The only deviation between the guardian ad litem's recommendation and the plan the trial court adopted was that the guardian had suggested Appellant receive one additional visitation day during the two-week cycle. (Tr. 475). Thus, the record does reflect that the trial court gave the recommendation of the guardian ad litem the deference to which it was entitled.
Since the trial court did not abuse its discretion in adopting the shared parenting arrangement submitted by Appellee on December 12th, Appellant's first assignment of error is overruled.
In his second assignment of error Appellant states:
 "THE TRIAL COURT ERRED IN NOT CALCULATING A DEVIATION IN CHILD SUPPORT TO REFLECT THE PARTIES' MUTUAL FINANCIAL AND TIME RESPONSIBILITIES FOR THE MINOR CHILDREN UNDER THE SHARED-PARENTING PLAN."
Appellant argues that since he and Appellee have almost equal incomes and they share parenting, the trial court should have deviated from the standard child support guidelines. Appellant points out that he and Appellee have comparable educational backgrounds, comparable homes, and received a fair share of debts and assets in the divorce. Since their situations are financially comparable, Appellant contends, it was unfair for the trial court to order him to pay standard child support.
R.C. § 3113.215 set out the guidelines for determining child support obligations when a shared parenting plan is involved. It was in effect at the time the trial court rendered its judgment. R.C. §3113.215 has since been repealed. It stated, in pertinent part:
 "If the court issues a shared parenting order in accordance with section 3109.04 of the Revised Code, the court shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet * * * except that, if the application of the schedule and the worksheet, * * *, would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in division (B)(3) of this section, the court may deviate from the amount of child support that would be ordered in accordance with the schedule and worksheet * * *." R.C. § 3113.215(B)(6)(a).
R.C. § 3113.215 did not provide for an automatic credit in child support under a shared parenting order. Pauly v. Pauly (1997),80 Ohio St.3d 386, 389. It specifically stated that the court shall order the amount of child support in accordance with the schedule and worksheet unless it would be unjust or inappropriate to do so.
According to R.C. § 3113.215(B)(6)(a), in determining extraordinary circumstances the court should consider those factors set out in section (B)(3). Additionally, the court should consider the factors set out in section (B)(6)(b) in determining whether the amount of child support would be unjust or inappropriate.
The record reveals that after reviewing the applicable factors, the court concluded that it would not be in the children's best interests to deviate from the child support worksheet. It reasoned that since the children reside with Appellee for longer amounts of time, she has more child-related expenses. The court also stated that Appellee has limited assets given her debts and that a child support award will directly benefit the children while they are in her care. Finally, the court noted that Appellant did not provide it with any direct evidence of his in-kind contributions or childcare costs.
It is apparent from the court's analysis that it followed the statute, considered all of the relevant factors, and based its decision on the best interest of the children. Therefore, it cannot be said that the trial court abused its discretion in deciding that no deviation from the child support guidelines was warranted and Appellant's second assignment of error is overruled.
In her cross-appeal, Appellee maintains the following:
 "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO IMPOSE AN ORDER OF SPOUSAL SUPPORT IN ACCORDANCE WITH THE FACTORS SET FORTH IN O.R.C. SECTION 3105.18."
Appellee argues here that she was entitled to at least temporary spousal support. Appellee points out that when the court compared the parties' incomes, it overlooked the fact that Appellee's income was insufficient to meet her expenses. Without such spousal support, Appellee complains that she will be unable to provide the lifestyle to which the children were accustomed while the parties were married.
Appellate review of matters surrounding spousal support decisions are also reviewed for an abuse of discretion. Young v. Young (Jan. 22, 1998), 7th Dist. No. 96-CO-26; Labedz v. Labedz (Dec. 30, 1997), 7th Dist. No. 96 C.A. 65, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
"A trial court, in awarding spousal support, must indicate the basis for its award in sufficient detail to permit proper appellate review," so that the reviewing court can determine that such award is fair, equitable and in accordance with law. Locke v. Locke (Nov. 30, 1998), 7th Dist. No. 97-CO-21; Mallett v. Mallett (1996), 116 Ohio App.3d 139, citingGraham v. Graham (1994), 98 Ohio App.3d 396; Hall v. Hall (Aug. 16, 1995), 7th Dist. No. 713, relying on Kaechele v. Kaechele (1988),35 Ohio St.3d 93. In determining whether spousal support is appropriate, the court is required to consider all of the following factors.
"(a) The income of the parties, from all sources, * * *;
"(b) The relative earning abilities of the parties;
 "(c) The ages and the physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
 "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, * * *;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 "(n) Any other factor that the court expressly finds to be relevant and equitable." R.C. § 3105.18(C)(1).
The trial court made the following specific findings regarding each of the factors enumerated in R.C. § 3105.18(C)(1): Appellant is employed at an annual salary of $50,627.71 while Appellee is paid $43,769.00 annually. The parties are college educated. Both appear to be in good physical, mental and emotional health. Each has their own retirement plan with their respective employer and have agreed to retain their own pensions.
The parties were married for seven and one-half years, during which time they enjoyed a middle class standard of living. Both parties were employed full-time throughout the marriage and neither expect that status to change. The parties accumulated minimal debt during the marriage. Appellee testified, however, that she cannot meet her monthly obligations based on her income and has had to borrow large sums of money from her mother and sisters.
Appellee claims that the trial court abused its discretion because it did not consider her financial need. As this court has noted before, spousal support is no longer dictated by a party's need. Olenik v. Olenik
(Sept. 18, 1998), 7th Dist. No. 94 CA 139; Heslep v. Heslep (June 14, 2000), 7th Dist. No. 825, 2000 WL 818909 at *4. Instead, the trial court should consider all of the factors listed in R.C. § 3105.18(C), and award spousal support only if it is appropriate and reasonable. Id.
After analyzing the variables presented here in light of the statutory factors, the trial court concluded that spousal support was not appropriate. That decision was based largely on the fact that the parties earn comparable and competitive salaries. The court acknowledged that Appellee had accumulated substantial debt, but attributed the debt to Appellee's decision to buy out Appellant's interest in the marital home rather than purchasing a less expensive home.
The record demonstrates that the trial court carefully considered the statutory factors and then reasonably concluded that spousal support was not warranted in Appellee's case. Accordingly, this Court cannot conclude that the trial court abused its discretion in so ruling.
As we must overrule all of the assignments of error presented, this Court hereby affirms the judgment entered by the Mahoning County Court of Common Pleas, Domestic Relations Division.
Vukovich, P.J., and DeGenaro, J., concur.