OPINION
{¶ 1} Defendant-appellant, George Mylan Firth, appeals from the decision of the Columbiana County Court of Common Pleas, Juvenile Division, denying his motion for a change of custody of his minor daughter.
 {¶ 2} Appellant and plaintiff-appellee, Constance Diane Green, have a daughter together, Cassandra M. Firth (Cassandra), born May 12, 1992. On January 12, 2000, appellant filed a motion to modify parental rights and responsibilities. Up until this time, appellee was Cassandra's residential parent and appellant had visitation rights. The trial court held a hearing on appellant's motion. Appellee failed to appear. The court proceeded without her and found that appellee had the required notice of the hearing and any notice she failed to receive was a result of her own neglect. (June 23, 2000 Judgment Entry). The court found the necessary change in circumstances and designated appellant as the residential parent. (June 23, 2000 Judgment Entry).
 {¶ 3} On August 25, 2000, appellee filed a motion to vacate the court's June 23 judgment entry alleging she never had notice of the hearing that resulted in the court naming appellant as Cassandra's residential parent. The court held a hearing on the motion and determined that appellee never received notice of the June hearing. Accordingly, the court vacated its findings on the evidence in the June 23 judgment entry and modified it to name appellant as the temporary residential parent until it could decide appellant's motion after a future hearing. (October 26, 2000 Judgment Entry).
 {¶ 4} Thus, on April 17, 2001, appellant's motion for reallocation of parental rights and responsibilities (January 12, 2000 motion) came for trial on the merits. The court terminated its temporary order naming appellant Cassandra's residential parent and denied appellant's motion for reallocation of parental rights and responsibilities in its May 14, 2001 judgment entry. Appellant filed his timely notice of appeal from this judgment.
 {¶ 5} Appellant raises one assignment of error, which states:
 {¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING PRIMARY RESIDENTIAL PARENT STATUS TO THE MOTHER, AND SUCH RULING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} Appellant argues that the trial court's decision was against the manifest weight of the evidence. He claims that at the time of the hearing on his motion, he was Cassandra's residential parent. Therefore, appellant asserts the trial court was required to find a change in circumstances warranting the switch of residential parent status from him to appellee. Appellant alleges appellee demonstrated no such change in circumstances. He points to two main factors to support his contention that the decision was against the manifest weight of the evidence. First, he notes Cassandra missed 43.5 days of school over a three-year period while residing with appellee. Second, he contends he had the authority to switch Cassandra's pediatrician because, at the time, he was her residential parent. Appellant contends that the trial court failed to consider these factors in rendering its decision and erred in designating appellee as Cassandra's residential parent.
 {¶ 8} R.C. 3109.04 guides a trial court's discretion in a custody modification proceeding. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus; Rohrbaugh v. Rohrbaugh (2000), 136 Ohio App.3d 599, 603. A trial court has broad discretionary powers in child custody proceedings.Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124. This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. Trickey v. Trickey (1952), 158 Ohio St. 9,13. An abuse of discretion connotes an attitude on the part of the court that is arbitrary, unreasonable or unconscionable. Blakemore v. Blakemore(1983), 5 Ohio St.3d 217, 219.
 {¶ 9} R.C. 3901.04(E)(1)(a) provides:
 {¶ 10} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 11} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 12} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 13} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 14} Accordingly, in the present case, the trial court was required to retain appellee as Cassandra's residential parent unless it found a change in circumstances as set out in R.C. 3109.04(E)(1)(a)(i) through (iii) had arisen since the last decree and a modification was in Cassandra's best interest. After reviewing the record, it is clear the trial court did not abuse its discretion in maintaining appellee as Cassandra's residential parent.
 {¶ 15} Appellant mistakenly asserts that at the time of the hearing, he was Cassandra's residential parent. The record clearly indicates although at the time of the hearing Cassandra resided with appellant, appellant was not Cassandra's residential parent. Appellant was merely her temporary residential parent. The trial court found that appellee never received notice of the hearing at which it modified parental rights and responsibilities awarding appellant residential parent status. Therefore, the court vacated its findings and altered its judgment entry to designate appellant as only the temporary residential parent until it could decide appellant's motion after a hearing. The effect of this judgment entry was that appellee was never divested of her residential parent status. Thus, at the April 2001 hearing, the trial court was faced with a rebuttable presumption that retaining appellee as the residential parent, as designated by the prior decree, was in Cassandra's best interests. Rohrbaugh, 136 Ohio App.3d at 604; R.C.3109.04(E)(1)(a).
 {¶ 16} Appellant also asserts the trial court failed to consider the amount of school days Cassandra missed while in appellee's care. He points out, while residing with him, Cassandra only missed 2.5 days of school. (Tr. 16). While the trial court was originally mistaken in its judgment entry as to how many school days Cassandra missed while residing with appellee, it subsequently corrected its error in its nunc pro tunc entry of January 31, 2002. The court had initially stated within its May 14, 2001 judgment entry that Cassandra had missed only 13 days of school over a two-year period. The court corrected the judgment entry to state Cassandra was absent from school approximately 13 days each year over a two-year period. Thus, the court corrected its error. Appellant further emphasizes that Cassandra was absent from school 43.5 days during her three-year school career. This averages to 14.5 days per year. The court was obviously aware of this information in reaching its decision since it mentioned Cassandra's absenteeism in its judgment entry. Furthermore, appellee's testimony demonstrated the reasons for Cassandra's absenteeism. Appellee testified that during the school years in question, Cassandra suffered from a severe case of chicken pox, bronchitis, surgery to repair a broken finger and surgery to remove her adenoids and tonsils. (Tr. 63, 71-72, 80).
 {¶ 17} Finally, appellant contends the court failed to consider that he had the authority to change Cassandra's pediatrician. The trial court found that appellant was ordered by the court not to unilaterally change Cassandra's physicians without permission from the court, yet he did so anyway. Appellant changed Cassandra's physician during the time the court had named him the residential parent. (Tr. 42). As the residential parent, appellant had the legal authority to make fundamental decisions about Cassandra's welfare. In re Gibson (1991),61 Ohio St.3d 168, 171. However, whether appellant acted properly in changing Cassandra's physician, does not alter the fact he failed to demonstrate the requisite change in circumstances or that it was in Cassandra's best interest he be named her residential parent.
 {¶ 18} As previously stated, there must be a change in circumstances before the court can consider any change in the parental rights. The only change in circumstances appellant may point to is the fact Cassandra missed an excessive amount of school days. It should be noted, however, Cassandra was in school before the last hearing regarding companionship. We also have very little evidence showing a change in appellant's or appellee's situations. The evidence focused upon the circumstances in both appellant's and appellee's homes.
 {¶ 19} In addition to the above factors, the record demonstrates the trial court did not abuse its discretion in finding it was in Cassandra's best interest that appellee continue as her residential parent.
 {¶ 20} When considering the best interest of a child the court shall consider, along with any other relevant factors:
 {¶ 21} "(a) The wishes of the child's parents regarding the child's care;
 {¶ 22} "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 {¶ 23} "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 {¶ 24} "(d) The child's adjustment to the child's home, school, and community;
 {¶ 25} "(e) The mental and physical health of all persons involved in the situation;
 {¶ 26} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 27} "(g) Whether either parent has failed to make all child support payments * * *;
 {¶ 28} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *;
 {¶ 29} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 30} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).
 {¶ 31} The following factors apply in this case. Each parent wishes to be Cassandra's residential parent. The court interviewed Cassandra in chambers. Cassandra has a half-brother, Harley, who resides with appellee. Harley testified that he loves Cassandra, he helps her with her homework and they play games together. (Tr. 95). Cassandra's maternal grandmother testified that Cassandra, appellee, appellee's husband, and herself have a good relationship, the whole family is very close, and they come quite often to visit. (Tr. 85). Nothing in the record indicates Cassandra has a bad relationship with either parent. Cassandra's guardian ad litem testified Cassandra expressed love for both appellant and appellee as well as for Harley. (Tr. 6). The guardian ad litem further testified Cassandra wanted to go back to living with appellee. (Tr. 6). In her report, the guardian ad litem noted, "Cassandra misses her mother and brother Harley when she is not at their home, and would like to be back with them." (Exhibit A).
 {¶ 32} Regarding school, the testimony revealed that Cassandra was held back in the first grade. (Tr. 15). Additionally, it was learned that Cassandra was diagnosed with attention deficit disorder. (Tr. 15). Appellant testified he permits Cassandra to do her homework on her own, and then reviews the work with Cassandra once she is finished. (Tr. 15). Appellee testified that she sits down with Cassandra while Cassandra is actually doing her homework. (Tr. 58-59).
 {¶ 33} Appellant testified that Cassandra is allergic to cigarette smoke, yet the appellee, appellee's husband and appellee's son all smoke. (Tr. 42). Appellee admitted she and her husband smoke, but testified they were retraining themselves to smoke only outdoors. (Tr. 63).
 {¶ 34} Appellee testified that during appellant's period as residential parent, appellant had shown flexibility in extending companionship. (Tr. 51, 68-70). Additionally, appellee acknowledged the child usually seemed upbeat when calling from appellant's home. (Tr. 50-51). However, appellee also stated that Cassandra told her she was not supposed to call appellee from appellant's home unless she called appellant while at appellee's home. (Tr. 48).
 {¶ 35} Based on the above evidence, we cannot say that the trial court abused its discretion in finding both that the requisite change in circumstances did not exist and it was in Cassandra's best interest for appellee to remain her residential parent. Thus, appellant's sole assignment of error is without merit.
 {¶ 36} For the reasons stated above, the decision of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.