[Cite as *Eddy v. Eddy*, 2011-Ohio-4315.]

STATE OF OHIO, HARRISON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KENNETH F. EDDY, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 10-HA-05 |
| | ) | |
| SAMANTHA D. EDDY, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common Pleas, Juvenile Division of Harrison County, Ohio
Case No. 04H212

JUDGMENT:     Affirmed

APPEARANCES:
For Plaintiff-Appellee     Attorney Adrian Hershey
4110 Sunset Boulevard
Steubenville, Ohio 43952

For Defendant-Appellant     Attorney Francesca Carinci
Suite 904-911, Sinclair Building
100 North Fourth Street
Steubenville, Ohio 43952

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: August 24, 2011

DONOFRIO, J.

{¶1}   Defendant-appellant, Samantha Eddy, appeals from a Harrison County Common Pleas Court, Domestic Relations Division decision implementing the shared parenting plan proposed by plaintiff-appellee, Kenneth Eddy.

{¶2}   Appellant and appellee were married on October 20, 2007.  One child, Kaden (d.o.b. 1/26/09) was born as issue of the marriage.

{¶3}   Appellee filed a complaint for divorce.  He also filed a proposed shared parenting plan and requested that the court adopt the plan.  The proposed plan called for appellant to be designated as the residential parent and appellee to be designated as the non-residential parent.  It further called for the parties to exchange the child for alternating one-week periods.

{¶4}   The court held a hearing on the matter.  Appellant opposed appellee's shared parenting plan.  She did not submit a proposed plan of her own.  She asked the court to allocate parental right and responsibilities as set out in the standard parenting guidelines.

{¶5}   The court determined that it was in Kaden's best interest to follow the terms of the shared parenting plan.  However, the court determined that it was also in Kaden's best interest to implement the parenting schedule gradually.  Thus, the court set out a schedule whereby appellee would first have Kaden for three consecutive days, then four, then five, and then finally the seven as set out in the proposed plan.

{¶6}   Appellant filed a timely notice of appeal on December 1, 2010.

{¶7}   Appellant raises only one assignment of error, which states:

{¶8}   "THE COURT ERRED AND ABUSED ITS DISCRETION IN IMPOSING A PLAN OF SHARED PARENTING EVEN THOUGH IT WAS CLEAR THAT THE PARTIES COULD NOT COOPERATE AND THAT SHARED PARENTING WAS CLEARLY NOT IN THE BEST INTEREST OF THE CHILD."

{¶9}   Appellant argues that the parties have no ability to communicate or cooperate because appellee does not even want to speak to her.  She insists that shared parenting will never work.  Specifically, appellant points to disagreement between the parties concerning appellee's epileptic mother caring for Kaden,

appellee's refusal to provide appellant with his cell phone number, her allegations that appellee has been suicidal in the past, her allegations that appellee has ignored Kaden's crying because he has been sleeping, and her allegations that whenever appellee has Kaden for visits Kaden comes home with diaper rash. Appellant contends that the court could not have found shared parenting to be in Kaden's best interest when it also found that appellee was unable to stay awake, adequately change Kaden's diaper, or to have a civil conversation with her.

{¶10} A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, syllabus; *Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599, 603. A trial court has broad discretionary powers in child custody proceedings. *Reynolds v. Goll* (1996), 75 Ohio St.3d 121, 124. This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13. An abuse of discretion connotes an attitude on the part of the court that is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶11} In allocating parental rights and responsibilities in a divorce, if at least one parent files a motion for shared parenting along with a shared parenting plan, which the court approves, and if shared parenting is in the best interest of the child, the court may allocate the parental rights and responsibilities for the care of the child to both parents and issue a shared parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children in accordance with the approved shared parenting plan. R.C. 3109.04(A)(2). If the court approves a shared parenting plan submitted by one of the parties, it shall enter findings of fact and conclusions of law as to the reasons for the approval. R.C. 3109.04(D)(1)(a)(iii).

{¶12} In determining the best interest of a child, the court shall consider all relevant factors, including, but not limited to:

**{¶13}** "(a) The wishes of the child's parents regarding the child's care;

**{¶14}** "(b) If the court has interviewed the child in chambers * * * the wishes and concerns of the child, as expressed to the court;

**{¶15}** "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

**{¶16}** "(d) The child's adjustment to the child's home, school, and community;

**{¶17}** "(e) The mental and physical health of all persons involved in the situation;

**{¶18}** "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

**{¶19}** "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

**{¶20}** "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to * * * [various criminal offenses involving children or domestic violence or whether either parent has been involved in various respects in a child abuse or neglect case.]

**{¶21}** "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

**{¶22}** "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1).

**{¶23}** In addition to the aforementioned best interest factors, when a court is determining whether shared parenting is in the best interest of the child, it shall also consider:

**{¶24}** "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

**{¶25}** "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

{¶26} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

{¶27} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

{¶28} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." R.C. 3109.04(F)(2).

{¶29} The court found the following. Appellant was Kaden's primary caretaker while the parties resided together but appellee also provided child care "as required." Since the separation, appellee has had regular parenting time, including uninterrupted four-day visits, during which time he has been responsible for Kaden's care. The only problem that has occurred during the visits with appellee was diaper rash. There was some evidence that while the parties were still together, appellee did not hear Kaden crying because he was asleep. Although appellant raised concerns about appellee's home, the only problem that has appeared after appellee's visits has been diaper rash. Kaden is still less than two years old and requires a high degree of care and supervision. Both the paternal and maternal grandparents live in close proximity to each other and appellant and both grandmothers are capable of providing care for Kaden when required. Communication between the parties is less than acceptable or appropriate. It is essential for Kaden's well-being that the parties establish suitable communication between themselves. Finally, the court concluded that appellee's proposed shared parenting plan provides for essentially equal parenting time and is in Kaden's best interest.

{¶30} The court's findings of fact are supported by the evidence. The witnesses testified as follows.

{¶31} Appellee testified that during the pendency of the divorce, he cared for Kaden for four to five days at a time. (Tr. 12). He stated that he has an adequate home, a bed for Kaden, and is able to feed, change, and clothe Kaden. (Tr. 13). When he has to work, appellee stated that his mother and family care for Kaden. (Tr. 13). Appellee stated that his mother does have epilepsy. (Tr. 13). However, her

doctor released her to have a driver's license and stated that she is capable of watching a small child. (Tr. 13). Appellee stated that his mother has small seizures where she might stare out into space for a few seconds and then comes right out of it. (Tr. 14). He further stated that his father is often at home with his mother. (Tr. 14). And appellee testified that during the marriage, when he and appellant had to work at the same time, childcare alternated between his mother and appellant's mother. (Tr. 34-35).

{¶32} Appellee also testified to some interference with his visitation by appellant. He stated that he was recently to have Kaden for a five-day visit and appellant refused him because his mother and sister went to pick Kaden up. (Tr. 15-16). Other than that incident, appellee testified that he and appellant have been able to implement an extended-visitation schedule. (Tr. 19-20).

{¶33} On cross examination, appellee admitted that he has refused to give appellant his cell phone number. (Tr. 24). He stated that he has given her his home phone number and his mother's phone number but did not wish to give her his cell phone number because she harasses him. (Tr. 24).

{¶34} Appellee's sister, Tina Craig, testified next. She gave the same basic information regarding her mother's epilepsy as appellee. (Tr. 40-41). Craig further testified that she has observed appellee with Kaden and they have a loving, caring relationship. (Tr. 41-42). She stated that appellee feeds, changes, and bathes Kaden. (Tr. 42).

{¶35} Appellee's mother, Eleanor Eddy, testified next. She stated that she babysat for Kaden when appellant and appellee were still together. (Tr. 49). She testified that she does suffer from epilepsy but that condition has never interfered with her ability to take care of Kaden. (Tr. 49). She stated that she occasionally has small seizures. (Tr. 49). She further stated that her doctor approved her to drive a car. (Tr. 49-50). Eleanor testified that appellee takes good care of Kaden and does all of the things a normal parent would do. (Tr. 50).

{¶36} Appellant was the next witness. She stated that after appellee left the

marital home, he did not pay her child support until he was court-ordered to do so. (Tr. 57). Appellant next testified that she has concerns with the safety of appellee's home and the fact that he refused to give her his cell phone number. (Tr. 59). She stated that she has discussed these things with appellee. (Tr. 59). As to the time she denied appellee visitation, appellant stated that it was because Eleanor and Craig had come to pick up Kaden without appellee and she was concerned because Eleanor was the one who was going to be watching Kaden. (Tr. 60-61). Appellant stated that since she made her concerns about Eleanor's epilepsy known, her concerns were addressed. (Tr. 61). However, she also testified that appellee has his mother return her phone calls and will not discuss things with her. (Tr. 61-62). And appellant stated that instead of telling her things, appellee writes the information down and hands it to her such as when Kaden ate or took a bath. (Tr. 62).

{¶37} Appellant further testified that while the parties resided together, she was Kaden's primary caretaker. (Tr. 64). She stated that when she was home, she was the one responsible for bathing, changing, and feeding Kaden. (Tr. 64).

{¶38} Appellant went on to testify that when visitation was initially ordered, appellee had Kaden on alternating weekends and on Wednesday evenings. (Tr. 64-65). She stated that Kaden adjusted well to this arrangement. (Tr. 65). Appellant further testified that Kaden began hitting and pulling hair and she and appellee came up with a correction plan for Kaden to work on this issue. (Tr. 65). However, she went on to testify that now when Kaden comes home from appellee's house he is very fussy. (Tr. 66). Additionally she stated that he frequently comes home with diaper rash. (Tr. 66, 76).

{¶39} Finally, appellant testified that during the time she and appellee were together, appellee had suicidal thoughts. (Tr. 84-85).

{¶40} Appellant's mother, Diane McAffee, also testified. McAfee stated that appellant has been Kaden's primary caretaker. (Tr. 87-88). She also stated that she cares for Kaden while appellant is at work. (Tr. 87-88). McAfee went on to testify that sometimes she would come over in the morning and Kaden would be crying

while appellee was sleeping instead of getting up with him.  (Tr. 88).

**{¶41}** The general best interest factors support the court's determination that shared parenting is in Kaden's best interest.  The applicable factors are as follow.

**{¶42}** Appellee requested shared parenting, while appellant requested that appellee only have standard visitation.  R.C. 3109.04(F)(1)(a).

**{¶43}** The court did not interview Kaden, presumably due to his young age.  R.C. 3109.04(F)(1)(b).

**{¶44}** By both parties' accounts, Kaden is content and well-cared for while in their respective care.  R.C. 3019.04(F)(1)(c).  Appellant is also cared for by his maternal and paternal grandparents who all live nearby.

**{¶45}** Kaden is well-adjusted at both parties' homes.  R.C. 3109.04(F)(1)(d).

**{¶46}** There was no evidence that either party suffers from any physical health issues. R.C. 3109.04(F)(1)(e).  Appellant did raise allegations that appellee had suicidal thoughts during their time together but no other evidence was presented to substantiate these allegations.  R.C. 3109.04(F)(1)(e).

**{¶47}** The only incident of either parent not honoring court-approved parenting time was when appellee's mother and sister went to pick up Kaden for appellee's scheduled visitation.  R.C. 3109.04(F)(1)(f).  Other than that, both parties have been able to cooperate in exchanging Kaden on alternating four- or five-day periods.

**{¶48}** There was no evidence that appellee failed to make all child support payments.  R.C. 3109.04(F)(1)(g).

**{¶49}** There was no evidence that either party or any member of their households was  ever convicted of or involved in the conduct set out in R.C. 3109.04(F)(1)(h).

**{¶50}** Neither party has continuously and willfully denied the other party's right to parenting time.  R.C. 3109.04(F)(1)(i).

**{¶51}** Finally, the evidence was that both parties reside in Ohio.  There was no evidence that either party was planning to establish a residence outside of Ohio.

R.C. 3109.04(F)(1)(j).

**{¶52}** As to the shared parenting factors, the following are applicable.

**{¶53}** Although the court found that the ability of the parents to cooperate and communicate is less than acceptable, it still found that it was in Kaden's best interest for the parties to take the actions necessary to establish suitable communications between themselves for the purpose of discussing the welfare of their son. R.C. 3109.04(F)(2)(a). Some evidence highlighted the communication problems between the parties, such as appellee's unwillingness to provide appellant with his cell phone number. But other evidence demonstrated that the parties can communicate with each other when they try, such as working out a plan to deal with Kaden's hair pulling and hitting.

**{¶54}** There was no specific evidence that either parent encouraged the sharing of love, affection, and contact between the child and the other parent. R.C. 3109.04(F)(2)(b). But there was no evidence to the contrary either.

**{¶55}** There was no evidence of any history of, or potential for, abuse, kidnapping, or domestic violence by either party. R.C. 3109.04(F)(2)(c).

**{¶56}** The parties live approximately 20 minutes away from each other, which is close proximity for exchanging Kaden. R.C. 3109.04(F)(2)(d).

**{¶57}** Finally, there was no guardian ad litem in this case to make a recommendation. R.C. 3109.04(F)(2)(e).

**{¶58}** Based on the totality of the factors involved in this case, we cannot say that the trial court abused its discretion in granting appellee's motion for shared parenting and adopting his shared parenting plan. Many factors weighed evenly as to the parties. And while the parties have some communication issues to work out, the evidence did not indicate that these issues were too severe to overcome. The evidence demonstrated that both parties are loving, capable parents. Thus, the court's determination that it is in Kaden's best interest to implement a shared parenting plan was not arbitrary, unreasonable, or unconscionable.

**{¶59}** Accordingly, appellant's sole assignment of error is without merit.

{¶60} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P.J., concurs.

DeGenaro, J., concurs.