JOURNAL ENTRY and OPINION
{¶ 1} C.P.,[1] mother of eight-year-old R.N., appeals from a decision of the juvenile court that terminated a previous shared parenting plan and designated the child's biological father as the residential parent. She claims that the decision was against the manifest weight of the evidence and that the court erred in finding that she denied visitation and provided no alternative shared parenting plan following her move out of state. We affirm.
 {¶ 2} R.N. was born in September 1998, and although his biological parents were never married, paternity was established and the mother, C.P., and father, R.N., divided time with their child. (Hereafter the parties will be referred to as "Mother" and "Father.") In May 2001, the parties entered into a formal Shared Parenting Plan, which designated Mother as the residential parent and allowed Father liberal parenting time with R.N. For the next several years, both Mother and Father voluntarily departed from the plan to allow each party more time with R.N.; however, in January 2003, Mother informed Father that she intended to move to California.
 {¶ 3} Father opposed Mother's intended move and filed a Motion to Modify the Allocation of Parental Rights and Responsibilities together with a Temporary Restraining Order to prevent Mother from relocating. A restraining order was issued, and in November 2003, Mother filed a Notice of Intent to Relocate to North Carolina and an Ex Parte Motion to Dissolve Restraining Order. In these motions, mother indicated that she intended to move to North Carolina because her new husband was being transferred in accord with his military service. In December 2003, Mother moved to North Carolina with her son, making no shared parenting arrangements immediately before or after the move.
 {¶ 4} Following Mother's relocation, the juvenile court scheduled a pretrial and ordered that R.N. be placed in his father's custody pending further hearing. Mother failed to comply with the order and, instead, the parties agreed to an interim possession schedule with equal parenting time between January 30, 2004 through June 27, 2004, with a full evidentiary hearing scheduled for June 28, 2004. The evidentiary hearing was later continued at Mother's request, and no amended parenting schedule was submitted or approved. During this time, R.N. remained in the custody of his mother and did not have scheduled visitation with his father throughout the summer of 2004.
 {¶ 5} On September 1, 2004, the juvenile court issued a second order granting Father possession of R.N. from September 11, 2004 through October 22, 2004. Mother again failed to comply with this order, and R.N. remained in his mother's custody in North Carolina.
 {¶ 6} A full evidentiary hearing was ultimately held on December 4, 2004, and the Magistrate ordered that the original shared parenting plan be terminated. He then designated Father as the residential parent and legal custodian of R.N. Mother filed objections to the Magistrate's Decision and, on August 15, 2005, the trial court overruled the objections and adopted the Magistrate's Decision. Mother appeals from this order in the assignments of error set forth in the appendix to this opinion.
 {¶ 7} In her first assignment of error, Mother contends that the juvenile court's December 6, 2004 decision is against the manifest weight of the evidence. She cites the court's failure to properly apply the "direct adverse impact test" and its conclusion that her relocation to another state constituted a "change of circumstances." Mother asserts that any harm caused by a change of environment is outweighed by the advantages of the change. Finally, she claims the court failed to follow R.C.3109.04(F) to determine the best interests of the child.
We first address mother's contentions that her relocation was not a "change of circumstances" and that the harm caused by this change is outweighed by its advantages. The modification of parental rights and responsibilities is governed by R.C.3109.04(E)(1)(a)(iii), which provides in pertinent part: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies: * * * (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 8} Modification of parental rights can occur only if (1) there was a change in circumstances since the parties filed the shared parenting plan with the court; (2) a modification was deemed to be in the best interests of the parties' children; and (3) the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the children. Rohrbaugh v. Rohrbaugh (2000), 136 Ohio App.3d 599. Further, the "change of circumstances" required to modify parental rights "must be a change of substance, not slight or inconsequential change." Davis v. Flickinger,77 Ohio St.3d 415, 418, 1997-Ohio-260.
 {¶ 9} As to the first prong of the Rohrbaugh test, the mother's relocation to North Carolina, particularly without any visitation schedule in place, constituted an obvious, consequential change in circumstances that occurred since the previous shared parenting plan was filed with the court. Mother's relocation made the previous shared parenting agreement impossible. Turning then to the third prong of the test — the harm caused by a change of environment — Mother asserts that the evidence did not support such a finding.
 {¶ 10} In Franklin v. Franklin (Sept. 12, 1984), Montgomery App. No. 81-DR-2210, the Second Appellate District examined a similar fact pattern and found as follows:
"Although a proposed move to another state does not in itself constitute sufficient justification for a change of custody, the new engagement and relationship of the custodian with her fiance, along with her stated intentions to change the child's environment from Dayton where he associates with his grandparents and other relatives, does constitute a sufficient change in circumstances under which modification of custody may be considered."
 {¶ 11} Further, other courts have held that "[a] court may consider the fact that a relocation of the child would remove him or her from a supportive network of family and friends as a factor in finding that a change of circumstances has occurred after the custodial parent expresses a desire to move to another state." In re Longwell (Aug. 30, 1995), Lorain App. No. 94 CA 006007. Likewise, in Green v. Green (Mar. 31, 1998), Lake County App. No. 96-L-145, the court held that "[a]lthough a relocation, by itself, is not sufficient to be considered a change of circumstances, it is certainly a factor in such a determination. In addition, the attendant circumstances, as well as the impact of such a move, can be considered by the court by [sic] determining if a change of circumstances has occurred."
 {¶ 12} In the supplemental findings of fact, dated December 6, 2004, the Magistrate examined both Mother's move out of state and the circumstances surrounding that move. He found that, "[t]he Court was mislead by Mother's `Motion in Opposition to Father's Motion to Continue' filed 11-21-03 which stated that `the mother will be moving out of state on December 4, 2003 with her new husband who is in the military' when in fact she did not marry until April of 2004." (Supplemental Finding, paragraph 6). The Magistrate went on to find that "said misrepresentation was crucial to the decision of the Court to terminate its' [sic] prior order restraining the mother from removing the child from the Court's jurisdiction." (Supplemental Finding, paragraph 7).
 {¶ 13} The Magistrate then noted several additional factors that weighed in support of removing mother as the custodial parent, specifically finding the following: (1) mother offered no alternative to the previous shared parenting schedule and made no additional plans for visitation between father and son; (2) mother failed to comply with two court orders, dated 9-1-04 and 1-14-04 respectively, which ordered her to immediately place the child in the father's custody; (3) mother offered no new proposed possession schedule until the day of trial, and (4) the plan that was ultimately submitted proposed significantly less time than the standard long distance plan used by the court. (Supplemental Findings, paragraph 8, 11-14.) The magistrate also considered that the child had no connection to North Carolina because all of his extended family, both maternal and paternal, reside in Ohio. (Supplemental Findings, paragraph 15-16.)
 {¶ 14} In the supplemental findings, the Magistrate, and subsequently the trial court, found that Mother's proposed plan offered significantly less time than the standard long-distance plan used by the court, and that the child had no connection to North Carolina because all of his extended family, both maternal and paternal, reside in Ohio. (Supplemental Findings, paragraph 8, 11-16.) Based upon these findings, the relocation to North Carolina would not constitute a slight or inconsequential move. The relocation would result in R.N. receiving less contact with both his biological father and his extended family because he would be leaving an area where both his maternal and paternal relatives reside to relocate to an area where he has no extended family, other than his half-siblings. A move from Ohio to North Carolina would impact R.N.'s ability to continue or foster his relationships with both his father and his relatives in Ohio.
 {¶ 15} Because the juvenile court found that a change of circumstances occurred and the record contains sufficient indications to support the conclusion that the harm caused by a relocation would outweigh the benefits of such a relocation, we turn now to the assertion that the juvenile court failed to address whether the best interests of the child test supports maintaining Mother as the custodial parent, or if Father should now step into that role.
R.C. 3109.04(F)(1) specifies the factors that the trial court should consider when determining the child's best interests, and provides: "(F) (1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (g) Whether either parent has failed to make all child support payments * * *; (h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense * * *; (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 16} In accord with the statute, the magistrate found:
"(1) Mother's move with the child to North Carolina which rendered the then existent Parenting schedule impossible and her subsequent marriage which introduced another significant adult into the child's life constitute a change in circumstances as contemplated in Section (E) (10((a) of O.R.C. 3109.04. (2) The change requires a modification because the prior schedule is impossible to comply with and without a change the Father is without possession time."
 {¶ 17} The magistrate also found:
"(a)this child has equally strong emotional ties to both sets of siblings * * *.
(b) The Father is the Parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights.
(c) Father is current on child support.
(d) Mother has continuously and willfully denied Father's right to parenting time in accordance with orders of the Court.
(e) Mother has established a residence out of state.
"Therefore, a modification of the prior order is in the child's best interests and the harm likely to be caused by a change of environment (The loss of Mother as the residential parent) is outweighed by the advantages of the change (Continuity of extended family relationships and assurance of significant visitation with both parents.)" (Supplemental Findings, p. 5).
 {¶ 18} It is clear from the Magistrate's findings that the juvenile court sufficiently addressed the necessary factors in determining the best interests of the child. Interestingly, Mother concedes that "it is Appellant's position that the Trial Court may have placed in his decision on all of the right code sections under ORC 3109.04(F)(1) * * *." (Appellant's brief at 18.) Although Mother nonetheless maintains that the record still does not support the decision, we cannot find that the Magistrate or the juvenile court erred in making such a determination.
 {¶ 19} Finally, Mother asserts that the court failed to properly apply the direct adverse impact test. Any reliance on this legal theory is misplaced because Mother failed to raise this assertion in her objections to the Magistrate's Decision and is therefore prohibited from raising this assertion on appeal under Civ.R. 53(E)(3)(d).
 {¶ 20} Even if Mother were not barred from raising this assertion, in prior cases referencing the "direct adverse impact test" courts have found that, "[i]n making a custody determination, the `direct adverse impact' test dictates that a court's inquiry into the moral conduct of a parent should be limited to the adverse effects of such conduct on the child."Inscoe v. Inscoe (1997), 121 Ohio App.3d 396, 414. Further, the court in Whaley v. Whaley (1978), 61 Ohio App.2d 111, 119
found, "[t]he direct adverse impact test allows the court to consider moral principles, but only in relation to the direct or probable effect of the parent's conduct on the child." There has been no question of the morality of either party's conduct as an impact on the child, but instead the juvenile court limited itself to determining the circumstances of the move, the parties' conduct surrounding the move, and the best interests of the child in light of the change of circumstances. It is clear from the detailed factual findings that the juvenile court clearly considered the impact on the child and, despite Mother's waiver of any claim under the "direct adverse impact test," the court clearly considered the impact on all parties involved and the best interest of R.N.
 {¶ 21} Mother's first assignment of error lacks merit.
 {¶ 22} In her second assignment of error, and citing no case law, Mother contends that the court erred in finding that she continually denied the father visitation and/or contact with R.N. She places great emphasis on the fact that Father admitted during his testimony that the "interim plan was successful." Tr. at 213.
 {¶ 23} Contrary to Mother's assertion, when she moved to North Carolina with her boyfriend, Mother refused to discuss visitation arrangements with Father. Tr. at 208-209. After the juvenile court ordered that R.N. be placed in the immediate custody of his Father, Mother refused to comply with the order and did not surrender custody of the child until January 17, 2004. Tr. at 44-45. While both parties admittedly entered into an interim possession schedule through the scheduled evidentiary hearing date of June 28, 2004, after the court granted a continuance, Mother failed to discuss or provide alternate visitation. Tr. at 215-216. Father then filed an emergency Motion for an Interim Possession Schedule, on July 9, 2004, a hearing was set for September 1, 2004. Following the hearing the juvenile court, again, ordered R.N. placed in his Father's custody. Mother again failed to comply with this order. In October 2004, Father filed an Emergency Motion to Effectuate the Return of the Minor Child, which the juvenile court subsequently granted. Judgment Entry, November 8, 2004. Although the record is unclear, it appears that Mother failed to produce R.N. on the date requested by Father, and only agreed to surrender the child after Father left North Carolina under the belief that Mother would never surrender the child.
 {¶ 24} During cross-examination of Mother, the following exchange regarding Father's lack of visitation took place:
Q. You're asking this Court to believe that whatever order it puts on you're going to abide by to the enth degree, is that right?
A. Yes.
Q. And the court is to ignore the last three or four orders that you blatantly violated, is that right?
A. Two.
Q. Two? Two?
A. I'm very sorry that it — that it happened.
Tr. at 364.
 {¶ 25} While mother admits to violating at least two court orders, in asserting error in the court's finding that she denied Father visitation, Mother also ignores the fact that following her continuance there was no visitation schedule in place and that she repeatedly refused to comply with court orders to surrender possession of R.N. When questioned on cross-examination whether or not she allowed R.N. to go for four and a half months without seeing his father, she admitted that this was "technically" correct. Tr. at 349.
 {¶ 26} In accord with this testimony, Mother also asserts in her brief that, at most, Father can "only" complain of a denial of "maybe, maybe, three (3) or (4) months in 2004, max: August, September, October and December 2004!!!" (Appellant's brief at 18.) However, it is clear that mother moved to North Carolina without a visitation schedule in place and that she refused to allow visitation following her move. In addition, the juvenile court's orders to surrender possession of the child went ignored.
For these reasons, the trial court did not err in determining that Mother denied Father visitation.
 {¶ 27} Mother's second assignment of error lacks merit.
 {¶ 28} In her final assignment of error, Mother asserts that despite the juvenile court's finding to the contrary, she submitted a plan for future visitation time to the father. She maintains that while she offered a "basis" for parenting times, this offering was not to be permanent and was not submitted to the court as her "final decision." (Appellant's Brief at 18.) Mother contends that the trial court could have ordered its own "long-distance visitation" order into effect. Again, Mother cites no case law to support her assertions.
 {¶ 29} During Mother's testimony at the evidentiary hearing, she proposed a shared parenting plan that allowed Father a total of forty-five days of visitation out of a possible six hundred and thirty days. In other words, Mother offered Father a month and a half visitation over a two-year period. Tr. at 348.
 {¶ 30} Mother also referenced an Informational Sheet and Parenting Plan that would allow R.N. to continue school in North Carolina through his high school graduation. Her plan would then allow R.N. to remain in North Carolina for two weeks after school lets out and two weeks before school would start again in the fall. Tr. at 333. Mother then proposed alternative Christmas holidays, for twelve days of break and three weekends. Tr. at 345. Therefore, Father would have thirteen days with R.N. on an alternating annual basis, but the plan provided no provisions for Thanksgiving visitation. Tr. at 345-346. During spring holidays, R.N. would have one year with Mother and one year with Father. Tr. at 346. Again, this plan would allow Father forty-five out of 630 days to be with his son. Tr. at 348. The following discussion took place during Mother's testimony:
Q. I'm correct. My math is correct. Do you find any flaw in my math?
A. Your math is correct.
Q. Thank you. Now, having said that, you just testified that you will do everything to encourage the child to see his extended family, is that right?
A. Yes.
Q. Going forward profectively [sic]. You'll do everything, right?
A. Yes.
Q. Because you care. But you didn't do it, did you?
A. Up until what point?
Q. You didn't do everything in the last year. You didn't do everything you could. You let that man and that child go four and a half months without seeing one another, am I correct? That's correct, isn't it?
A. Technically.
Tr. at 349.
 {¶ 31} It is clear from the testimony presented at the evidentiary hearing and from the reference to Mother's shared parenting plan, referenced as Court Exhibit, M-1, that Mother did in fact propose such a plan. The juvenile court found Mother's plan unacceptable and did in fact implement its own long-distance parenting plan for the parties, as suggested by Mother in her appellate brief. (Appellant's brief at 18.)
 {¶ 32} Mother's final assignment of error lacks merit.
 {¶ 33} The ruling of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sean C. Gallagher, P.J., And Kenneth A. Rocco, J., concur.
 APPENDIX
ASSIGNMENTS OF ERROR
"I. THE TRIAL COURT DECISION OF DECEMBER 6, 2004 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE:
A. THE TRIAL COURT ERRED, IN ITS DECISION, BY NOT PROPERLY APPLYING THE "DIRECT ADVERSE IMPACT TEST" ON THE FACTS PRESENTED PRIOR TO TERMINATING THE PARTIES' SHARED [SIC] PARENTING PLAN AND MODIFYING CUSTODY FROM APPELLANT TO APPELLEE
B. THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT'S RELOCATION TO ANOTHER STATE WAS A "CHANGE OF CIRCUMSTANCES" TO TERMINATING THE PARTIES [SIC] SHARED PARENTING PLAN AND THEREBY MODIFYING CUSTODY FROM APPELLANT TO APPELLEE,
C. HARM CAUSED BY A CHANGE OF ENVIRONMENT IS OUTWEIGHED BY ADVANTAGES OF SUCH CHANGE AND SUCH CONCLUSION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
D. THE TRIAL COURT ERRED, IN ITS DECISION, BY NOT PROPERLY DETERMINING THE "BEST INTERESTS" PURSUANT TO ORC 3109.04(F) OF THE MINOR CHILD PRIOR TO TERMINATING THE PARTIES SHARED PARENTING PLAN AND MODIFYING CUSTODY FROM APPELLANT TO APPELLEE,
II. THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT CONTINUOUSLY AND WILLFULLY DENIED APPELLEE VISITATION.
III. THE TRIAL COURT ERRED IN CONCLUDING THAT THE TRIAL COURT ERRED IN CONCLUDING THAT APPELLANT PROVIDED NO ALTERNATIVE TO [SIC] SHARED PARENTING PLAN"
[1] This court protects the identity of all parties in juvenile matters.